PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

In Re: JAMES OWEN MURPHY, JR.,
                              *Debtor.*

JAMES OWEN MURPHY, JR., d/b/a
Murphy's Golf Shop,
                 *Plaintiff-Appellant,*

          v.                                No. 05-1637

GERALD M. O'DONNELL, Trustee,
                 *Defendant-Appellee.*

In Re: STANLEY JOSEPH GORALSKI;
DORIS ANN GORALSKI,
                              *Debtors.*

GERALD M. O'DONNELL, Chapter 13
Trustee,
                 *Trustee-Appellant,*                No. 05-1844

          v.

STANLEY JOSEPH GORALSKI; DORIS
ANN GORALSKI,
                 *Debtors-Appellees.*

Appeals from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Senior District Judge.
(CA-05-151-1-CMH; BK-03-15596-SSM; CA-05-353-1;
BK-03-12055-SSM)

Argued: November 28, 2006

Decided: January 18, 2007

Before WILLIAMS and TRAXLER, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

---

Affirmed by published opinion. Senior Judge Hamilton wrote the
opinion, in which Judge Williams and Judge Traxler joined.

---

## COUNSEL

Bennett Allan Brown, Fairfax, Virginia, for Appellant in No. 05-
1637. Gerald M. O'Donnell, Alexandria, Virginia, for Appellee in
No. 05-1637/Appellant in No. 05-1844. Timothy John McGary, Fair-
fax, Virginia, for Appellees in No. 05-1844.

---

## OPINION

HAMILTON, Senior Circuit Judge:

The two cases before the court involve instances in which the
Chapter 13 trustee sought to modify a confirmed Chapter 13 plan to
increase the amount to be paid to the unsecured creditors.[1] In the first
case, that of Stanley and Doris Goralski, the Chapter 13 trustee sought
to modify the confirmed Chapter 13 plan after the bankruptcy court
granted the Goralskis permission to refinance the mortgage on their
residence. In the refinancing, the Goralskis received some of the
equity in their residence in cash in exchange for a corresponding
amount of debt, and the Chapter 13 trustee sought a portion of this
money for the further benefit of the unsecured creditors. The Goral-
skis sought to refinance their mortgage primarily because Stanley

---

[1] The cases were argued *seriatim*, but we have consolidated them for
decision.

Goralski's earned income was cut approximately in half, making it difficult for the Goralskis to make their plan payments and, at the same time, pay their ordinary and necessary living expenses. In the second case, that of James Owen Murphy, Jr., the Chapter 13 trustee sought to modify the confirmed Chapter 13 plan after the bankruptcy court granted Murphy permission to sell his condominium. The Chapter 13 trustee sought a portion of the sale proceeds for the further benefit of the unsecured creditors because, without a modification, Murphy stood to pocket in excess of $80,000, as his condominium had dramatically increased in value post-confirmation. The bankruptcy court granted the motion to modify in Murphy's case, but denied it in the Goralskis' case. *See In re Murphy*, 327 B.R. 760 (Bankr. E.D. Va. 2005). The district court affirmed the bankruptcy court's decisions. Murphy appeals the decision in his case, as does the Chapter 13 trustee in the Goralskis' case. For the reasons stated below, we affirm.

I

The facts and procedural history in these two cases are not in dispute and are set forth separately for the reader's convenience.

A

Stanley and Doris Goralski filed a joint Chapter 13 petition in the United States Bankruptcy Court for the Eastern District of Virginia on April 29, 2003. The schedules filed with the petition reflected that they owned real property located at 13617 Chevy Chase Lane, Chantilly, Virginia, which they valued at $223,000. The schedules further reflected that the property was subject to liens in the total amount of $192,400. The Goralskis listed the sum of $89,438 as the amount of their unsecured debt. The plan filed by the Goralskis with their petition was confirmed without objection on September 18, 2003. It required the Goralskis to pay the Chapter 13 trustee $1,100 per month for thirty-six months and estimated a twenty-eight percent dividend to the unsecured creditors. The Goralskis' confirmed plan provided that, upon confirmation, "[a]ll property of the estate shall revest in the debtor[s]."

On October 21, 2004, approximately eighteen months after the Chapter 13 petition was filed, the Goralskis filed a motion for permission to refinance the mortgage on their residence, which had appreciated significantly in value. As part of the refinancing, the Goralskis sought to obtain a portion of the equity in their residence in cash in exchange for a corresponding amount of debt.[2] The primary reason given for seeking to refinance was that Stanley Goralski's earned income had been cut approximately in half, making it difficult for the Goralskis to make their plan payments and, at the same time, pay their ordinary and necessary living expenses.[3] In the motion, the Goralskis offered to pay all remaining payments required under the confirmed plan.

At the hearing on the motion, the Chapter 13 trustee took the position that, to the extent the proceeds of the refinancing were sufficient to pay all filed claims in full, the Goralskis should be required to pay the filed claims at a rate of 100 percent. The bankruptcy court overruled the Chapter 13 trustee's objection and granted the motion to refinance. The next day, the Chapter 13 trustee filed a motion to reconsider, as well as a motion to modify the confirmed plan, asking that the Goralskis' confirmed plan be modified to require $64,365 from the refinancing be paid to the Chapter 13 trustee to allow for the payment of all filed claims at a rate of 100 percent.

After the bankruptcy court refused to grant the Chapter 13 trustee's motion for modification and motion for reconsideration, the Chapter 13 trustee appealed. Following the district court's affirmance of the bankruptcy court's decision, the Chapter 13 trustee appealed to this court.

B

On December 15, 2003, Murphy filed a voluntary Chapter 13 petition in the United States Bankruptcy Court for the Eastern District of Virginia. On his schedules, he indicated that he owned a condomin-

---

[2]The refinancing the Goralskis sought is commonly referred to as a "cash-out" refinancing.

[3]It also appears from the record that the interest rate on the new loan sought by the Goralskis was lower than the rate on their existing loan.

ium located at 10125 Oakton Terrace Road, Oakton, Virginia, which he valued at $155,000, subject to a lien of $121,000. Murphy's schedules also listed $52,374 of unsecured debt. Murphy's plan, which was confirmed on April 29, 2004, required him to pay the Chapter 13 trustee $700 per month for thirty-six months and projected a thirty-seven percent dividend to the unsecured creditors. Like the Goralskis' confirmed plan, Murphy's confirmed plan provided that, upon confirmation, "[a]ll property of the estate shall revest in the debtor."

On November 8, 2004, Murphy filed a motion for authority to sell his condominium for $235,000, explaining that he had obtained a new job in Pennsylvania and needed to move.[4] In the motion, Murphy indicated that he was willing to tender a sum to the Chapter 13 trustee sufficient "to complete the payment of debtor's chapter 13 payments." The Chapter 13 trustee did not object to the sale, but stated at the hearing that he needed approximately $30,000 from the sale to pay the filed unsecured claims in full. Murphy objected to paying the Chapter 13 trustee anything more than the approximately $12,000 still owed under the confirmed plan. The bankruptcy court preliminarily ruled that the sale proceeds constituted income that had to be applied to the plan and directed that $30,000 be turned over to the Chapter 13 trustee. Because Murphy's counsel stated that he intended to appeal the ruling, and so that there could be a final order to allow the contract to go to settlement, the order entered by the bankruptcy court simply approved the sale and stated that disposition of the $30,000 would be the subject of a further order. The bankruptcy court's ruling allowed the Chapter 13 trustee to disburse up to $11,973 of the proceeds (the amount needed to complete the scheduled plan payments) but required the Chapter 13 trustee to hold the balance of the $30,000 pending further order of the court.[5] Although the ruling technically favored the Chapter 13 trustee, the Chapter 13 trustee moved for

---

[4]Murphy's confirmed plan provided that he could not sell his condominium without bankruptcy court approval.

[5]The exact details concerning the sale are not in the record. It appears that, after paying the required plan payments, Murphy stood to net over $80,000. Of this amount, the Chapter 13 trustee sought approximately $18,000 to pay the unsecured creditors at a rate of 100 percent. Thus, with the unsecured creditors being paid at a rate of 100 percent, Murphy nets over $60,000.

reconsideration and, contemporaneously, moved to modify the plan payments to allow for payment of all pending unsecured claims at a rate of 100 percent.

In its decision, the bankruptcy court modified the confirmed plan to provide for full payment of the pending unsecured claims. On appeal to the district court, the district court affirmed the bankruptcy court's ruling. Murphy now appeals to this court.

## II

In contrast to a Chapter 7 bankruptcy, which involves the liquidation of a debtor's assets, a Chapter 13 bankruptcy allows the debtor to keep his assets. In a typical Chapter 13 bankruptcy, the debtor submits for bankruptcy court approval a plan to pay the debtor's creditors his disposable income over a period of three years. 11 U.S.C. §§ 1321, 1322, and 1325. In exchange for the debtor's commitment to part with all of his disposable income, the debtor is given a discharge of his remaining dischargeable debts if he successfully complies with the terms of the plan. *In re Crawford*, 324 F.3d 539, 541 (7th Cir. 2003). Although secured claims in a Chapter 13 bankruptcy must be paid in full, unsecured creditors need not be paid in full, provided, among other things, the plan is proposed in good faith and the present value of what the unsecured creditors receive under the plan is at least as much as they would receive in a Chapter 7 liquidation. 11 U.S.C. §§ 1325(a)(3), (a)(4).

Generally, there are two types of Chapter 13 plans. "Percentage" plans designate what percentage each unsecured creditor will receive without specifying an exact amount the debtor must pay into the plan. *In re Golek*, 308 B.R. 332, 335 (Bankr. N.D. Ill. 2004). In contrast, "pot" plans set the exact amount the debtor must pay into the plan, leaving in question the percentage each unsecured creditor will receive until all claims are approved. *Id.* Both of the plans in this case are pot plans.

A confirmed Chapter 13 plan is "a new and binding contract, sanctioned by the court, between the debtors and their pre-confirmation creditor[s]." *Matter of Penrod*, 169 B.R. 910, 916 (Bankr. N.D. Ind. 1994); *see also* 11 U.S.C. § 1327(a) ("The provisions of a confirmed

plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, had accepted, or has rejected the plan."). Like other contracts, a confirmed Chapter 13 plan is subject to modification. *In re Arnold*, 869 F.2d 240, 241 (4th Cir. 1989).

Under § 1329 of the Bankruptcy Code,[6] a confirmed plan may be modified at "any time after confirmation of the plan but before the completion of payments" at the request of the debtor, the Chapter 13 trustee, or an allowed unsecured creditor in order to, among other things, "increase or reduce the amount of payments on claims of a particular class provided for by the plan; [or to] extend or reduce the time for such payments." 11 U.S.C. §§ 1329(a), (a)(1), and (a)(2).[7] Under § 1329(b)(1), any post-confirmation modification must comply with §§ 1322(a) and (b),[8] § 1323(c),[9] and § 1325(a)[10] of the Bank-

---

[6]Section 1329 of the Bankruptcy Code provides in relevant part:

(a)   At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—

(1)   increase or reduce the amount of payments on claims of a particular class provided for by the plan;

(2)   extend or reduce the time for such payments; [or]

(3)   alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan.

* * *

(b)(1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.

11 U.S.C. § 1329.

[7]We note that § 1329(a) allows for slight plan modification in two additional circumstances: (1) to alter the amount of the distribution to a creditor who has received a payment outside of the confirmed plan; and (2) to reduce the debtor's plan payments due to a debtor's need to purchase health insurance. 11 U.S.C. §§ 1329(a)(3), (a)(4).

[8]Section 1322(a) of the Bankruptcy Code sets forth the requirements that must be met by a Chapter 13 plan in order to be approved by the

ruptcy Code. *Id.* § 1329(b)(1). Moreover, we review the bankruptcy court's decision whether to grant or deny a motion to modify a confirmed plan for an abuse of discretion. *In re Arnold*, 869 F.2d at 244.

We have not set forth a thorough analysis on how a bankruptcy court should analyze a motion for modification pursuant to §§ 1329(a)(1) or (a)(2). In *In re Arnold*, after rejecting several arguments of the debtor, we held that the bankruptcy court did not abuse its discretion by increasing the debtor's monthly payment from $800 to $1,500. *Id.* at 244-45. In reaching this decision, we held that the doctrine of *res judicata* prevents modification of a confirmed plan pursuant to §§ 1329(a)(1) or (a)(2) unless the party seeking modification demonstrates that the debtor experienced a "substantial" and "unanticipated" post-confirmation change in his financial condition. *Id.* at 243. This doctrine, which is applied in this circuit per *In re Arnold*, ensures that confirmation orders will be accorded the necessary degree of finality, preventing parties from seeking to modify plans when minor and anticipated changes in the debtor's financial condition take place. *See In re Butler*, 174 B.R. 44, 47 (Bankr. M.D. N.C. 1994) ("As a matter of sound public policy, as well as appropriate judicial economy, there is no reason why either a creditor or a debtor should be permitted to relitigate issues which were decided in the

---

bankruptcy court. Section 1322(b) sets forth all permissible provisions which can be included in a Chapter 13 plan.

[9]Section 1323(c) provides that any "holder of a secured claim that has accepted or rejected the plan is deemed to have accepted or rejected, as the case may be, the plan as modified, unless the modification provides for a change in the rights of such holder from what such rights were under the plan before modification, and such holder changes such holder's previous acceptance or rejection." 11 U.S.C. § 1323(c).

[10]Section 1325(a) of the Bankruptcy Code provides, in the pertinent part, that a bankruptcy court shall confirm a plan if: (1) it complies with all applicable provisions of the Bankruptcy Code; (2) it has been proposed in good faith and not by any means forbidden by law; (3) the value of property to be distributed under the plan on account of all allowed unsecured creditors is not less than what would be paid under a Chapter 7 liquidation; and (4) the debtor is able to comply with the terms of the modified plan. 11 U.S.C. §§ 1325(a)(1), (a)(3), (a)(4), and (a)(6).

confirmation order or which were available at the time of confirmation but not raised by the parties. Absent this salutary policy, there is no readily available brake on the filing of motions under § 1329 by creditors and debtors simply hoping to produce a more favorable plan based on the same facts presented at the original confirmation hearing."); *but see Barbosa v. Soloman*, 235 F.3d 31, 38-41 (1st Cir. 2000) (rejecting doctrine of *res judicata* as inconsistent with the language of § 1329); *Matter of Witkowski*, 16 F.3d 739, 744-46 (7th Cir. 1994) (same).

Although we did not define the term "substantial" in *In re Arnold*, we held that an increase in the debtor's salary from $80,000 per year to $200,000 per year was a substantial change in the debtor's financial condition. 869 F.2d at 243. A change is unanticipated if the debtor's present financial condition could not have been reasonably anticipated at the time the plan was confirmed. *Id.*

Because the doctrine of *res judicata* did not prevent modification of the debtor's confirmed plan in *In re Arnold*, we proceeded to discuss and reject the one argument the debtor had concerning the requirements of § 1329(b)(1)—that he did not have the ability to pay $1,500 per month under the modified plan. *Id.* at 243-44.

Simply stated, per *In re Arnold*, when a bankruptcy court is faced with a motion for modification pursuant to §§ 1329(a)(1) or (a)(2), the bankruptcy court must first determine if the debtor experienced a substantial and unanticipated change in his post-confirmation financial condition. This inquiry will inform the bankruptcy court on the question of whether the doctrine of *res judicata* prevents modification of the confirmed plan. If the change in the debtor's financial condition was either insubstantial or anticipated, or both, the doctrine of *res judicata* will prevent the modification of the confirmed plan. However, if the debtor experienced both a substantial and unanticipated change in his post-confirmation financial condition, then the bankruptcy court can proceed to inquire whether the proposed modification is limited to the circumstances provided by § 1329(a). If the proposed modification meets one of the circumstances listed in § 1329(a), then the bankruptcy court can turn to the question of whether the proposed modification complies with § 1329(b)(1).

A

In the case of the Goralskis, we agree with the bankruptcy court and the district court that, through the cash-out refinancing, the Goralskis did not experience a substantial change in their financial condition. The record reflects that, although the Goralskis' residence appreciated in value post-confirmation, Stanley Goralski's earned income had been reduced by approximately one-half. To meet their obligations under the confirmed plan, the Goralskis refinanced their existing mortgage, taking a sizeable amount of the equity (over $64,000) in their residence to allow them to continue to meet their financial obligations under the confirmed plan (through a lump sum payment or continued periodic payments) and to pay their every day living expenses.

All the Goralskis did was to eliminate a portion of their equity in the property for cash in exchange for a corresponding amount of debt. Thus, even when one considers that the Goralskis' residence appreciated in value post-confirmation,[11] at most, they simply received a large loan in place of a small one. By any stretch, a loan, regardless of the size, is not income. The apparent increase in their balance sheet was offset by the amount of the loan, resulting in virtually no change to their financial condition. To be sure, although the Goralskis obtained a lower interest rate on their new loan, this fact alone did not substantially improve their financial condition, especially when one considers the primary reason for the refinancing—Stanley Goralski's reduced income. Under the doctrine of *res judicata*, there being no substantial change to the Goralskis' financial condition, the cash-out refinancing cannot provide a basis for modifying the Goralskis' confirmed plan pursuant to §§ 1329(a)(1) or (a)(2).

We note that there is considerable disagreement in the courts concerning whether a debtor's proposal for an early payoff through the refinancing of a mortgage amounts to a motion for modification of a confirmed plan, thus, requiring an inquiry into the requirements of § 1329(b)(1) before the modification can be granted. *See In re*

---

[11]At the time they filed their Chapter 13 petition, the Goralskis had $30,600 in equity in their residence. At the time of the refinancing, they had over $64,000 in such equity.

*Brumm*, 344 B.R. 795, 799-801 (Bankr. N.D. W. Va. 2006) (discussing case law). Some courts have held that a debtor's proposal of an early payoff through refinancing amounts to a motion for plan modification. *See, e.g.*, *In re Keller*, 329 B.R. 697, 699-700 (Bankr. E.D. Cal. 2005); *In re Drew*, 325 B.R. 765, 772 (Bankr. N.D. Ill. 2005). These courts primarily reason that an early payoff through refinancing: (1) reduces the number and the time for making payments under §§ 1329(a)(1) and (a)(2); (2) preempts the right of the Chapter 13 trustee and the unsecured creditors to propose a modified plan during the remaining term of the confirmed plan should the circumstances warrant such a modification; and (3) amounts to a realization of the value of appreciation which is akin to selling property at a substantial gain. *In re Keller*, 329 B.R. at 699-700; *In re Drew*, 325 B.R. at 772. In contrast to these courts, several courts have held that a debtor's proposal of an early payoff through refinancing does not amount to a motion for plan modification. *See, e.g.*, *In re Miller*, 325 B.R. 539, 540 (Bankr. W.D. Pa. 2005). These courts essentially reason that a debtor's proposal of an early payoff through refinancing does not change the substance of the confirmed plan and actually increases the economic worth of the plan to the creditors by paying them off early. *Id.* at 542.

If we were to write on a clean slate, we would find ourselves struggling much like these other courts have struggled. However, we are not writing on a clean slate. Under *In re Arnold*, a debtor must experience a substantial and unanticipated change in his post-confirmation financial condition before his confirmed plan can be modified pursuant to §§ 1329(a)(1) or (a)(2). A debtor's proposal of an early payoff through the refinancing of a mortgage simply does not alter the financial condition of the debtor and, therefore, cannot provide a basis for the modification of a confirmed plan pursuant to §§ 1329(a)(1) or (a)(2).

We also observe that our decision clearly strikes the right balance between debtors on the one hand and creditors on the other. Our decision encourages refinancing when the debtor is struggling "under less advantageous loan terms, which, by implication, puts the future stream of payments to creditors under the Chapter 13 plan at risk." *In re Brumm*, 344 B.R. at 803. As noted by the court in *In re Brumm*, lower payments on long term debt, which often is achieved through

lower interest rates on a refinancing, gives a debtor "greater short term financial stability." *Id.* Moreover, our decision encourages refinancing when the debtor's income, such as in the case of Stanley Goralski, goes down, thereby putting at risk the debtor's ability to make plan payments. The debtor's early payoff coupled with his assumption of long term debt works to the benefit of the unsecured creditors, as the unsecured creditors receive their benefit of the bargain under the confirmed plan and are no longer exposed to a further reduction in the amount they will receive through a debtor's motion to modify the confirmed plan.

In this case, the Goralskis unquestionably took the more noble course of seeking to fulfill their obligations under the confirmed plan when the reduction in Stanley Goralski's income could have motivated them to file their own motion to modify, seeking to pay less. For taking the high road, the Goralskis should not be penalized. Accordingly, we affirm the district court's affirmance of the bankruptcy court's decision in the Goralskis' case because the doctrine of *res judicata* prevents modification of the Goralskis' confirmed plan pursuant to §§ 1329(a)(1) or (a)(2).

B

Unlike the Goralskis' case, in Murphy's case, we conclude that Murphy did experience a substantial and unanticipated change in his post-confirmation financial condition, and, thus, the doctrine of *res judicata* does not prevent the modification of Murphy's confirmed plan pursuant to §§ 1329(a)(1) or (a)(2). To be sure, Murphy listed the value of his condominium as of December 15, 2003, the date his bankruptcy petition was filed, at $155,000, subject to a lien of $121,000. In November 2004, he sold it for $235,000, a 51.6 percent increase in only eleven months. Unquestionably, the money received by Murphy on the sale of his condominium represents a "substantial" improvement in Murphy's financial condition. Unlike the Goralskis' refinancing, Murphy, by selling his condominium, received a substantial amount of readily available cash without any debt. Thus, his financial condition substantially changed with the receipt of this income, while the Goralskis' condition did not improve in light of the new debt they assumed.

Turning to the question of whether this change in Murphy's financial condition could have been reasonably anticipated at the time the plan was confirmed, on the one hand, the Chapter 13 trustee should have general knowledge of real estate market trends in his district. In this case, the parties apparently concede that, in the two years preceding plan confirmation, the increase in the Housing Price Index for the Washington, D.C.-Alexandria-Arlington area ranged from ten to thirteen percent per year. Thus, Murphy's position would be stronger if his house appreciated, say, twenty-five percent in eleven months. However, a 51.6 percent increase certainly is an unanticipated change given the current market trends. Accordingly, because there has been a substantial and unanticipated change in Murphy's financial condition, we can turn to the question of whether the bankruptcy court abused its discretion when it ordered Murphy to share part of his new-found financial gains with his unsecured creditors.

In assessing whether to grant or deny the Chapter 13 trustee's motion for modification, the bankruptcy court was required to determine whether the Chapter 13 trustee's motion for modification sought one of the circumstances for modification set forth in § 1329(a). The Chapter 13 trustee's motion meets this requirement, as he sought to, among other things, increase the amount paid to the unsecured creditors. *See* 11 U.S.C. § 1329(a)(1). Next, the bankruptcy court was required to determine if the Chapter 13 trustee's proposed modification complied with § 1329(b)(1). As noted above, under § 1329(b)(1), any post-confirmation modification of a confirmed plan must comply with §§ 1322(a) and (b), § 1323(c), and § 1325(a) of the Bankruptcy Code. *Id.* § 1329(b)(1).

Sections 1322(a) and (b) set forth the mandatory and permissive provisions of a Chapter 13 plan. The Chapter 13 trustee's motion for modification implicates § 1322(a)(1) in the sense that the modification is seeking to ensure that a portion of Murphy's new-found income is paid to ensure the execution of the modified plan. Section 1323(c) provides that if a secured creditor has accepted a plan, it is deemed to accept the modified plan unless the modified plan changes the treatment of the secured creditor's claim. The Chapter 13 trustee's motion does not implicate this section. Section 1325(a) contains the standards for confirmation of a plan—including the "good faith" test in § (a)(3), the "best interests of creditors" test in § (a)(4), and the

"ability to pay" test in § (a)(6). These sections are implicated in this case.

First, it is obvious that the Chapter 13 trustee's proposal to modify the plan to pay the unsecured creditors at a rate of 100 percent is feasible insofar as Murphy unquestionably has the ability to pay the unsecured creditors at a rate of 100 percent. Indeed, even with a 100 percent payout, Murphy still is netting in excess of $60,000 on the sale of his condominium without any corresponding debt. Next, we agree with the lower courts and the Chapter 13 trustee that a 100 percent payment to the creditors meets the best interest of the creditors under the circumstances of this case. Finally, the Chapter 13 trustee's proposal to modify was made in good faith. Our decision in *In re Arnold* recognizes that a debtor who experiences a substantial and unanticipated improvement in his financial condition after confirmation should not be able to avoid paying more to his creditors. 869 F.2d at 242. In contravention to *In re Arnold*, Murphy is seeking to do just that. He is seeking to pocket over $80,000 by selling his residence less than a year after his plan was confirmed, without paying a portion of that money to his unsecured creditors, who are receiving under the current confirmed plan only about thirty-seven cents on the dollar. In exercising his fiduciary duty, the Chapter 13 trustee proposed the modification in good faith to prevent Murphy from receiving such a substantial windfall. Accordingly, the bankruptcy court did not abuse its discretion when it modified Murphy's confirmed plan to provide for full payment of the pending unsecured claims.

## C

Finally, we need to address one other argument raised by Murphy. He argues that the bankruptcy court was not at liberty to modify his confirmed plan because his plan, in accordance with § 1327(b), vested all property of the estate in him at the time of confirmation. According to Murphy, once his plan was confirmed, the Chapter 13 trustee forfeited any claim to the proceeds of the sale.

Section 1327(b) of the Bankruptcy Code states that "the confirmation of a plan vests all of the property of the estate in the debtor." *Id.* § 1327(b). Section 1327(c) states that such vesting "is free and clear of any claim or interest of any creditor provided for by the plan." *Id.*

§ 1327(c). Section 1306(a) of the Bankruptcy Code, which defines the concept "property of the estate" for purposes of Chapter 13, states:

> (a)   Property of the estate includes, in addition to the property specified in section 541 of this title—
>
>> (1)   all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first; and
>>
>> (2)   earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first.

*Id.* § 1306(a). By providing that the bankruptcy estate continues to be replenished by post-petition property until the case is closed, dismissed, or converted under Chapter 7, 11, or 12 of the Bankruptcy Code, § 1306(a) provides for the continued existence of the bankruptcy estate until the earliest of any of the above-mentioned events occur.

Given the language of §§ 1306(a) and 1327(b), it is understandable that the interplay of these two sections of the Bankruptcy Code has troubled courts and commentators. *See, e.g.*, *Barbosa*, 235 F.3d at 36-37; David B. Wheeler, *Whose Property Is It Anyway?*, 18-Nov Am. Bankr. Inst. J. 14 (1999). Indeed, on the one hand, § 1306(a) expands the definition of property of the estate to all property obtained by the debtor through the end of his case, but, on the other hand, § 1327(b) states that all property of the estate vests in the debtor upon confirmation of the plan.

Five interpretations of the interplay between §§ 1306(a) and 1327(b) have developed. *See Woodward v. Taco Bueno Rest., Inc.*, 2006 WL 3542693 (N.D. Tex. December 8, 2006) (discussing four interpretations and offering a fifth). To resolve Murphy's argument,

we need not discuss these varying interpretations or select one as the most preferable. Under *In re Arnold*, a debtor cannot use plan confirmation as a license to shield himself from the reach of his creditors when he experiences a substantial and unanticipated change in his income. 869 F.2d at 241-43. To be sure, through §§ 1329(a)(1) and (a)(2), Congress gave a debtor an out when his financial condition substantially deteriorates and, concomitantly, gave the Chapter 13 trustee and the unsecured creditors an avenue to recoup when the debtor's financial condition substantially improves, provided the change in financial condition is unanticipated. In *In re Arnold*, we permitted a modification of a confirmed plan where the debtor's salary went from $80,000 to $200,000. *Id.* at 241. If a substantial, unanticipated salary increase warrants a modification, we see no reason why substantial, unanticipated income realized from the sale of property would not also warrant a modification of a confirmed plan. Thus, even though property vested in Murphy upon confirmation, this fact did not prevent the Chapter 13 trustee from seeking to modify Murphy's plan.

## III

For the reasons stated herein, the judgments of the district court are affirmed.

*AFFIRMED*