FILED

APR 05 2012

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**ORDERED PUBLISHED**

# UNITED STATES BANKRUPTCY APPELLATE PANEL

# OF THE NINTH CIRCUIT

In re: )    BAP No.   WW-11-1478-JuHKi
   )
ROBBYN DALE MATTSON and RENEE )    Bk. No.   10-50455
DIANE MATTSON, )
   )
                    Debtors. )
_____ )
   )
ROBBYN DALE MATTSON; RENEE )
DIANE MATTSON, )
   )
                    Appellants, )
   )    **O P I N I O N**
v. )
   )
DAVID M. HOWE, Chapter 13 )
Trustee, )
   )
                    Appellee. )
_____ )

Argued and Submitted on March 23, 2012
at Seattle, Washington

Filed - April 5, 2012

Appeal from the United States Bankruptcy Court
for the Western District of Washington

Honorable Brian D. Lynch, Bankruptcy Judge, Presiding.
_____

Appearances:   Matthew J.P. Johnson, Esq. argued for appellants
               Robbyn Dale Mattson and Renee Diane Mattson;
               Michael G. Malaier, Esq. argued for appellee,
               David M. Howe, Chapter 13 Trustee.
_____

Before:  JURY, HOLLOWELL, and KIRSCHER, Bankruptcy Judges.

JURY, Bankruptcy Judge:

Chapter 13[1] above-median debtors, Robbyn Dale Mattson and Renee Diane Mattson ("Debtors"), moved to modify their confirmed plan under § 1329 due to their post-confirmation increase in income. Debtors proposed to increase plan payments and shorten the term of their plan from five years to three years. The chapter 13 trustee and appellee, David M. Howe, objected to the shortened term, contending that Debtors were above-median and required to contribute their increased income to a five year plan.

The bankruptcy court granted Debtors' motion to increase their payments under the plan, but denied their request to shorten the term. The court held that in addition to satisfying the good faith requirement under § 1325(a)(3), which applies to modified plans by reference in § 1329(b)(1), Debtors also had to show a substantial, unanticipated change in their circumstances since the time of confirmation and that their proposed modification correlated to their change in circumstances. The bankruptcy court found that Debtors' proposed reduction in the term of their plan did not correlate with their change in circumstances (i.e., the increase in their income), nor did they offer any justification for reducing the length of their plan payments. This appeal followed.

Although the reasoning of the bankruptcy court for denying

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and "Rule" references are to the Federal Rules of Bankruptcy Procedure.

the shortened term deviates from our precedent, for the reasons stated below we nevertheless AFFIRM.

## I. FACTS

The facts in this appeal are not in dispute and are adequately summarized in the bankruptcy court's published decision, In re Mattson, 456 B.R. 75 (Bankr. W.D. Wash. 2011). We incorporate the relevant facts below and supplement them when needed.

On December 21, 2010, Debtors filed their chapter 13 petition. Their schedules listed assets including a house, four vehicles, various funds in bank accounts, personal and household furnishings and over $83,000 in a retirement account, most of which were exempted. Debtors' Schedule F listed $163,367 in unsecured debt.

Schedule I showed that Debtors were employed by the Camas School District. Ms. Mattson was a teacher, earning an average of $3,067 per month; Mr. Mattson was listed as a "substitute janitor" from which he had no earnings yet per month and also showed an average $1,200 per month from operation of a business. Debtors' combined average monthly income totaled $4,267 per month. Debtors' Schedule J reflected expenses of $4,117 per month, leaving a monthly net income of $150 per month.

Schedule I stated that Mr. Mattson had just been hired as a substitute janitor within a week before the bankruptcy filing, and while he had not commenced work yet, he anticipated getting $16.50 per hour for what work he would be given. That was expected to reduce his other income from "operation of a business." Mr. Mattson's businesses were not identified in the

-3-

schedules, but the bankruptcy court noted that the case was filed as "f/d/b/a Robbyn D. Mattson Insurance" and "d/b/a East County Battery Doctors." Debtors' Statement of Financial Affairs Number 18 identified prior businesses as "insurance sales" and "reconditioning/sales of automotive batteries." Schedule I further noted that Mr. Mattson also earned approximately $2,760 a year coaching sports but this income was excluded from Schedule I as it was only for two months of the year and would not be available during an average month.

Debtors' Form B22C indicated they were above-median debtors and reflected a projected disposable income of $253 per month, although the Form B22C also noted that it didn't accurately reflect Debtors' projected income because it reflected the income from Mr. Mattson's previous job and his seasonal income. Looking to the prior six-month period, Debtors argued, showed a substantially higher amount than their average income would be going forward, given Mr. Mattson's lower income from the new job and the unavailability of the seasonal income.

Debtors filed a chapter 13 plan which proposed a $150 per month payment for 60 months, for total payments of $9,000. Those payments went to Debtors' attorney and unsecured creditors, who were expected to receive 2% on their claims. Debtors proposed to pay directly the secured creditors on their home and one vehicle. The bankruptcy court confirmed Debtors' plan by order entered on March 2, 2011.

Just over two and a half months later, on May 24, 2011, Debtors filed amended Schedules I and J. On amended Schedule I, Mr. Mattson was now listed as a "janitor" (rather than

-4-

substitute) and the average monthly income for both Debtors had increased to a total of $5,936 per month. Ms. Mattson's income had increased slightly more than $400 a month, and Mr. Mattson's income had doubled, to over $2450 per month. The amended Schedule J listed higher expenses totaling $4,906 per month, nearly $800 per month higher than the original schedule. While the amended Schedule J no longer reflected business operation expenses of $288 per month, indicating Debtors' apparent abandonment of Mr. Mattson's previous business, expenses in nearly every other category increased. Some of the increases reflected potentially expected changes due to Mr. Mattson's increase to full time employment as a janitor (increases in transportation and clothing, for example). However, the amended Schedule J also included increased expenses in other areas (for example, electricity and heating fuel for Debtors' home, home maintenance, food, medical and dental expenses, vehicle maintenance and licensing, and recreation and entertainment). In total, though, the amended Schedule I and Schedule J showed an overall increase in monthly excess income to $1,030 per month.

Approximately three weeks after the amended schedules were filed, or just over three months after the plan had been confirmed, Debtors filed their amended plan and a motion for modification on June 15, 2011. In their motion to modify, Debtors stated that modification was necessary because their income had increased. Under the amended plan and motion, Debtors' plan would be modified to provide for increased payments of $900 per month in June 2011 and then $1,000 per

-5-

month beginning with the July 2011 payment and the term of the plan would be reduced from 60 to 36 months. Debtors' amended plan proposed to pay their attorney and unsecured creditors, who would receive a payout increasing from $4,000 to $30,000.

The chapter 13 trustee objected to Debtors' motion, arguing that Debtors should be required to pay the increased $1,000 monthly payment for the confirmed commitment period of 60 months. Under the originally filed means test, from which Debtors had increased their income, Debtors had a positive monthly disposable income of $253 per month. Given the positive disposable income figure, the trustee argued, Debtors were not permitted under the Ninth Circuit's decision in Maney v. Kagenveama (In re Kagenveama), 541 F.3d 868 (9th Cir. 2008), to seek a deviation from the 60 month commitment period and Debtors cited no authority in their motion which would allow them to do so. The trustee maintained that because Debtors' income had increased there was no reason why Debtors could not make payments for 60 months. Lastly, the trustee argued that Congress clearly intended that above-median debtors propose and complete a 60 month plan.

Debtors replied that they were not bound to any predetermined commitment period because income based calculations under § 1325(b) were not applicable to modifications under § 1329 under our holding in Sunahara v. Burchard (In re Sunahara), 326 B.R. 768 (9th Cir. BAP 2005). Debtors argued that as long as their proposed amended plan was filed in good faith and met the other requirements of chapter 13 incorporated into § 1329, they could reduce the duration of the

plan, without consideration of the applicable commitment period in the confirmed plan. Debtors also cited other bankruptcy court decisions in the Ninth Circuit which they contended authorized the debtor to amend his or her plan to less than 60 months. In re Hall, 442 B.R. 754, 760-61 (Bankr. D. Idaho 2010); In re Ewers, 366 B.R. 139, 143 (Bankr. D. Nev. 2007).

After a hearing on July 5, 2011, the matter was submitted and the bankruptcy court issued its published opinion. In it, the court decided that a predictable test for crafting and reviewing plan modifications was preferable to the good faith analysis espoused in In re Sunahara. Accordingly, the court held that, in addition to the Sunahara good faith analysis, plan modification under § 1329 also requires the moving party to show that there has been a substantial change in the debtor's circumstances after confirmation "which was unanticipated or otherwise could not be taken into account at the time of the confirmation hearing, and that the change in the plan correlate[s] to the change in circumstances." In re Mattson, 456 B.R. at 82 (emphasis in original). In light of this standard, the bankruptcy court found that Debtors' proposed modification to shorten the term of their plan did not correlate with the change in circumstances—their increased income. Id.

The bankruptcy court also addressed the relevance of the applicable commitment period to plan modifications. The court found that § 1329(c), which states that a plan "modified under this section may not provide for payments over a period that expires after the applicable commitment period under section 1325(b)(1)(B)," suggested that the applicable commitment period

did not go away with modification, but was fixed at confirmation.  Id. at 83.  In other words, "[t]he plan may be extended by the Court for good cause, though not beyond five years, but the applicable commitment period from § 1325(b) cannot be altered."  Id.  However, the bankruptcy court did not accept the trustee's position that, unless a debtor proposed to pay the unsecured creditors in full, the length of the plan could not be reduced under § 1329(a)(2).  The court acknowledged that a debtor's financial circumstances may change in a way that justified a reduction in plan length as demonstrated by In re Ewers, 366 B.R. 139.[2]

The bankruptcy court entered the Memorandum Decision on August 26, 2011.  Debtors timely appealed.

## II.  JURISDICTION

The bankruptcy court had jurisdiction over this proceeding under 28 U.S.C. §§ 1334 and 157(b)(2)(L).  We have jurisdiction under 28 U.S.C. § 158.

## III.  ISSUE

Whether the bankruptcy court abused its discretion in

---

[2] In Ewers, the debtors' income went down when they retired after confirmation of their plan.  They moved to reduce the term of their plan from five years to three years.  The bankruptcy court held that the term of a modified plan is not restricted to the applicable commitment period that was first established under § 1325(b).  The court found that the debtors' chapter 13 plan may be modified to a three-year plan without paying their unsecureds in full, if the plan otherwise satisfied the requirements of § 1329(b), which included the requirement of good faith under § 1325(a).  In the end, the bankruptcy court allowed the trustee to provide further briefing on the issue of the debtors' good faith with respect to the timing of their retirement.

-8-

denying Debtors' request to shorten the term of their plan from five years to three years.

## IV.  STANDARDS OF REVIEW

Modification under § 1329 is discretionary.  In re Sunahara, 326 B.R. at 772; Powers v. Savage (In re Powers), 202 B.R. 618, 623 (9th Cir. BAP 1996).  A bankruptcy court abuses its discretion if it applies the wrong legal standard or its findings are illogical, implausible or without support in the record.  TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011).

While the bankruptcy court's decision whether to allow modification is reviewed for abuse of discretion, whether the bankruptcy court was correct in its interpretation of the applicable statutes is reviewed de novo.  Towers v. United States (In re Pac.-Atlantic Trading Co.), 64 F.3d 1292, 1297 (9th Cir. 1995).

Whether a plan modification has been proposed in good faith by the debtor is a question of fact, and the bankruptcy court's findings on that issue are reviewed for clear error.  Downey Sav. & Loan Ass'n v. Metz (In re Metz), 820 F.2d 1495, 1497 (9th Cir. 1987).  A factual finding is clearly erroneous if it is illogical, implausible, or without support in inferences that can be drawn from the facts in the record.  United States v. Hinkson, 585 F.3d 1247, 1262–63 (9th Cir. 2009) (en banc).

We may affirm on any ground supported by the record.  Siriani v. Nw. Nat'l Ins. Co. (In re Siriani), 967 F.2d 302, 304 (9th Cir. 1992).

## V. DISCUSSION

Chapter 13 plan modification is governed by § 1329. Section 1329(a) provides for post-confirmation plan modifications under four delineated circumstances, two of which are relevant here:

> At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor . . ., to——
>
> (1) increase . . . the amount of payments on claims of a particular class provided for by the plan;
>
> (2) extend or reduce the time for such payments[.]

When a debtor's proposed modifications fall within one or both of these provisions, the bankruptcy court must then decide whether the proposed modification complies with § 1329(b)(1). That section states: "[s]ections 1322(a), 1322(b), and 1323(c) of this title and the requirements of § 1325(a) of this title apply to any modification under subsection (a) of this section." The statute's reference to § 1325(a) means that the plan as modified must be proposed in good faith under § 1325(a)(3). In this Circuit, bankruptcy courts make good faith determinations under § 1325(a)(3) on a case-by-case basis, after considering the totality of the circumstances. See Leavitt v. Soto (In re Leavitt), 171 F.3d 1219, 1224–25 (9th Cir. 1999); 550 W. Ina Rd. Trust v. Tucker (In re Tucker), 989 F.2d 328, 330 (9th Cir. 1993); Goeb v. Heid (In re Goeb), 675 F.2d 1386, 1390 & n.9 (9th Cir. 1982); see also Smyrnos v. Padilla (In re Padilla), 213 B.R. 349, 352 (9th Cir. BAP 1997).

Notably missing from § 1329 is any express requirement that a substantial and unanticipated change in the debtor's financial

-10-

circumstances is a threshold requirement to overcome the res judicata effect of a confirmed plan under § 1327(a).[3] However, concerns over the finality of a confirmed plan led to the judicially developed substantial and unanticipated change test to inform the court on the initial question of whether the doctrine of res judicata prevented modification of a confirmed plan. See Murphy v. O'Donnell (In re Murphy), 474 F.3d 143, 149 (4th Cir. 2007). The Fourth Circuit, which is the only Court of Appeals to apply the substantial and unanticipated change test, explained the multi-step analysis for plan modification using the test:

> [W]hen a bankruptcy court is faced with a motion for modification pursuant to §§ 1329(a)(1) or (a)(2), the bankruptcy court must first determine if the debtor experienced a substantial and unanticipated change in his post-confirmation financial condition. This inquiry will inform the bankruptcy court on the question of whether the doctrine of res judicata prevents modification of the confirmed plan. If the change in the debtor's financial condition was either insubstantial or anticipated, or both, the doctrine of res judicata will prevent the modification of the confirmed plan. However, if the debtor experienced both a substantial and unanticipated change in his

[3] Section 1327(a) addresses the finality of chapter 13 plan confirmation orders: "The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." We have observed that "'[t]he purpose of § 1327(a) is the same as the purpose served by the general doctrine of res judicata. There must be finality to a confirmation order so that all parties may rely upon it without concern that actions which they may thereafter take could be upset because of a later change or revocation of the order . . . .'" Great Lakes Higher Educ. Corp. v. Pardee (In re Pardee), 218 B.R. 916, 923 (9th Cir. BAP 1998), aff'd 193 F.3d 1083 (9th Cir. 1999). We use the term res judicata in its generic sense to encompass the claim preclusion and issue preclusion doctrines.

-11-

> post-confirmation financial condition, then the bankruptcy court can proceed to inquire whether the proposed modification is limited to the circumstances provided by § 1329(a). If the proposed modification meets one of the circumstances listed in § 1329(a), then the bankruptcy court can turn to the question of whether the proposed modification complies with § 1329(b)(1).

Id. at 150 (citing Arnold v. Weast (In re Arnold), 869 F.2d 240, 243 (4th Cir. 1989).

The First, Fifth and Seventh Circuits have rejected this approach and do not impose on parties seeking to modify a confirmed plan the threshold requirement of the substantial unanticipated change test. See Barbosa v. Soloman, 235 F.3d 31, 41 (1st Cir. 2000), Meza v. Truman (In re Meza), 467 F.3d 874, 878 (5th Cir. 2006), and In re Witkowski, 16 F.3d 739, 746 (7th Cir. 1994) all holding that no change in circumstances is required. The Ninth Circuit has not directly ruled on the issue but in Anderson v. Satterlee (In re Anderson), 21 F.3d 355, 358 (9th Cir. 1994) suggested in dicta that the substantial and unanticipated change test applies.[4] See Pak v. eCast Settlement Corp. (In re Pak), 378 B.R. 257, 268 (9th Cir. BAP 2007).

Although dicta from the Ninth Circuit is persuasive, we are bound only by the Ninth Circuit's holdings and not by the court's election, whether express or implied, to leave open

---

[4] In In re Anderson, which was not a plan modification case, the Ninth Circuit stated that the trustee can request a modification under § 1329(a), but bears "the burden of showing a substantial change in debtor's ability to pay since the plan was confirmed and that the prospect of that change had not already been taken into account at the time of confirmation." 21 F.3d at 358.

-12-

particular legal questions.[5] However, in interpreting a statute, we have been instructed to follow the plain meaning rule and apply a statute according to its terms unless to do so would lead to absurd results. U.S. Trustee v. Lamie, 540 U.S. 526, 534 (2004). As a consequence, we have traditionally taken a plain meaning approach to statutory interpretation questions. For this reason, in In re Powers, Max Recovery, Inc. v. Than (In re Than), 215 B.R. 430, 435 (9th Cir. BAP 1997), and McDonald v. Burgie (In re Burgie), 239 B.R. 406, 409 (9th Cir. BAP 1999), we held that the res judicata doctrine did not apply to plan modifications and, therefore, the substantial and unanticipated change test was unnecessary as a threshold requirement because the plain language of § 1329 did not support this judicially created requirement.[6] See also Ledford v. Brown (In re Brown), 219 B.R. 191, 195 (6th Cir. BAP 1998) (same).

Despite our not adopting the substantial and unanticipated

_____

[5] For this same reason, we are not convinced that the Supreme Court's dicta in Ransom v. FIA Card Servs., N.A., ___ U.S. ___, 131 S. Ct. 716 (2011) fares any better. The issue in Ransom also was not about plan modification but whether the debtor was entitled to a car-ownership deduction for purposes of the means test when he owned his car free and clear. The Supreme Court held that the debtor was not entitled to a deduction expense for a vehicle which he did not have. The court further held that "[t]he appropriate way to account for unanticipated expenses like a new vehicle purchase is not to distort the scope of a deduction, but to use the method that the Code provides for all Chapter 13 debtors (and their creditors): modification of the plan in light of changed circumstances." Id. at 730.

[6] We are bound by these prior decisions. Ball v. Payco-Gen. Am. Credits, Inc. (In re Ball), 185 B.R. 595, 597 (9th Cir. BAP 1995) (holding that the Panel is bound by decisions of prior Panels).

-13-

change test as a prerequisite to plan modification, we have held, as did the Seventh Circuit in In re Witkowski, that the bankruptcy court may consider a change in circumstances in the exercise of its discretion. In re Powers, 202 B.R. at 623. In the end, in evaluating plan modifications, it may make little practical difference whether the bankruptcy court applies the substantial and unanticipated change test as a threshold requirement or uses it as a discretionary tool.[7]

In light of this background, and the purpose behind the substantial and unanticipated change test, we conclude that to the extent the bankruptcy court applied the test it was harmless error given that Debtors did experience a substantial and unanticipated change in their post-confirmation income. Thus,

_____

[7] As the bankruptcy court in In re Klus, 173 B.R. 51, 58 (Bankr. D. Conn. 1994) noted:

There may be little practical difference between those two positions. The plain language of subsection (3) of § 1329(a) requires a post-confirmation change in circumstances, i.e. payment on the claim outside of the plan. While subsections (1) and (2) contain no such requirement, the significance of that fact is limited by § 1329(b)(1), which requires that the modified plan comply with § 1325(a). If, for example, a creditor seeks to modify the plan to increase payments to the unsecured creditor class under § 1329(a)(1), the modification cannot be approved unless the debtor has the ability to make the increased payments. See § 1325(a)(6). If the debtor has satisfied the obligation to use all disposable income to fund the plan, see § 1325(b), the creditor's modification will be disapproved unless there has been a post-confirmation improvement in the debtor's financial circumstances. Conversely, any effort by the debtor to reduce payments is circumscribed by the good faith requirement of § 1325(a)(3) . . . .

-14-

even under the Fourth Circuit's more stringent standard, the doctrine of res judicata did not prevent Debtors from modifying their plan under § 1329(a)(1) or (2).[8] Nevertheless, the bankruptcy court was still required to determine whether Debtors' proposed modification to reduce the term of their plan complied with § 1329(b)(1) and its cross reference to the good faith requirement under § 1325(a)(3).

In this regard, the bankruptcy court acknowledged our holding in In re Sunahara that § 1329(b)(1) does not reference or otherwise incorporate the provisions concerning the disposable income test and applicable commitment period contained in § 1325(b).[9] See also In re Hall, 442 B.R. at 761 (holding because § 1329 does not include any reference to § 1325(b), even though § 1329 includes specific reference to

---

[8] Whether Debtors should have been allowed to modify their plan by increasing plan payments under § 1329(a)(1) is not at issue in this appeal.

[9] Section 1325(b)(1) states:

If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

other Code sections, the requirements of § 1325(b) should not be applicable to § 1329 modifications).[10]  As a result, if a debtor's plan modification was challenged, he or she need not show that all of their projected disposable income was devoted to making plan payments under the modified plan.  In re Sunahara, 326 B.R. at 781-82.

However, as the bankruptcy court aptly observed, In re Sunahara did not leave a wide open field for modifications to be approved.  In re Mattson, 456 B.R. at 79; see also Barbosa, 235 F.3d at 41 (noting that "as a practical matter, parties requesting modifications of Chapter 13 plans must advance a legitimate reason for doing so"); In re Powers, 202 B.R. at 622 ("Although a party has an absolute right to request modification between confirmation and completion of the plan, modification under § 1329 is not without limits."); In re Meeks, 237 B.R. 856, 859-60 (Bankr. M.D. Fla. 1999) ("[T]he Debtors need not demonstrate a substantial, unanticipated change in circumstances in order to modify their confirmed chapter 13 plan.  However, neither can Chapter 13 debtors simply modify their plans willy nilly.").

The Sunahara Panel held that

> [I]mportant components of the disposable income test are employed as part of a more general analysis of the total circumstances militating in favor of or against the approval of modification, without requiring tortured and illogical statutory interpretations (where the outcome differs depending upon which party

---

[10] Although there is a split of authority on this issue, the majority of courts hold that post-confirmation modifications are not governed by § 1325(b).  In re Grutsch, 453 B.R. 420, 424 & n.14 (Bankr. D. Kan. 2011) (collecting cases).

-16-

is seeking modification, whether a certain party has objected, or whether 'extraordinary circumstances' exist, etc.).

326 B.R. at 781. Thus, the Panel instructed the bankruptcy court to "carefully consider whether modification has been proposed in good faith." Id. (citing § 1325(a)(3)). We reasoned that a good faith determination

necessarily requires an assessment of a debtor's overall financial condition including, without limitation, the debtor's current disposable income, the likelihood that the debtor's disposable income will significantly increase due to [greater] income or decreased expenses over the remaining term of the original plan, the proximity of time between confirmation of the original plan and the filing of the modification motion, and the risk of default over the remaining term of the plan versus the certainty of immediate payment to creditors.

Id. at 781-82; see also In re Grutsch, 453 B.R. at 427 ("'The good faith requirement of § 1325(a)(3) fills the gap that would otherwise exist, allowing all parties to object to inappropriate payment terms—whether excessive or inadequate—in a proposed modification.'").

Here, the bankruptcy court believed that the good faith test lacked predictability and therefore added the requirements of the substantial and unanticipated change test and that the change in the plan correlate to the change in circumstances. 456 B.R. at 82. We conclude that the bankruptcy court's second requirement—that the proposed modification correlate to Debtors' change in circumstances—necessarily implicates a good faith analysis. See In re Savage, 426 B.R. 320, 324 & n.3 (Bankr. D. Minn. 2010) (in order to comply with the "good faith" requirement of § 1325(a)(3), "the required change in financial circumstances should be directly resonant with the nature of the

-17-

proposed modification").[11]  Indeed, we view the bankruptcy court's correlation requirement as simply another factor that may be considered under the totality of circumstances approach to a good faith analysis in this Circuit.  We emphasize, however, that no single factor is determinative of the lack of good faith.

Contrary to the bankruptcy court's belief that the good faith test lacks predictability, we continue to accept that a good faith analysis under § 1325(a)(3), although not an exact science, adequately guides the exercise of the court's discretion for deciding plan modification issues.

> [O]ur reliance in Sunahara on the § 1325(a)(3) good faith standard is vulnerable to criticism that it introduces a level of subjectivity that could yield disparate results.  That subjectivity, however, is constrained by settled law of the circuit that good faith is to be assessed through the matrix of whether the plan proponent 'acted equitably' taking into account 'all militating factors' in a manner that equates with the 'totality' of circumstances.

Fridley v. Forsythe (In re Fridley), 380 B.R. 538, 543 (9th Cir. BAP 2007) (citation omitted).  Thus, the Fridley Panel dismissed the argument that adopting the reasoning in In re Sunahara would license "circumvention of § 1325(b) by the ploy of confirming a plan that complies with § 1325(b) and then promptly modifying

---

[11] Similar to the bankruptcy court here, the bankruptcy court in In re Savage required that any modification that would reduce a debtor's payment obligations and creditors' distribution rights to be supported by a material, adverse change in the debtor's financial circumstances, that took place after the confirmation of the original plan.  426 B.R. at 324.  Recently, the Eighth Circuit Bankruptcy Appellate Panel in Johnson v. Fink (In re Johnson), 458 B.R. 745, 749 (8th Cir. BAP 2011) has cited with approval the holdings in In re Savage and In re Mattson.

-18-

the plan in a manner that does not comply with § 1325(b). Such a stratagem plainly would be an unfair manipulation of the Bankruptcy Code, which is a factor named in Goeb as indicative of a plan proponent not acting equitably and, hence, not in good faith." Id.

The "settled law" in this Circuit referred to by In re Fridley demonstrates that the good faith test under § 1325(a)(3) is neither ill-defined nor does it lack a predictable base. In In re Goeb, the Ninth Circuit set forth a generalized test for good faith that includes consideration of the substantiality of proposed plan payments; whether the debtor has misrepresented facts in the plan; whether the debtor has unfairly manipulated the Bankruptcy Code; and whether the plan is proposed in an equitable manner. 675 F.2d at 1390. At the very least, these factors direct attention away from the amorphous good faith concept, bringing relevant facts to the foreground. Moreover, the standards set forth in In re Goeb offer a solid framework for evaluating a variety of circumstances, which is consistent with the discretionary aspect of plan modifications. At bottom, determinations of good faith are made on a case-by-case basis, after considering the totality of the circumstances. Id. Finally, bankruptcy courts are not free to ignore the concept of good faith in plan modifications given that § 1329 specifically references § 1325(a) and its good faith requirement.

The bankruptcy court's holding and the facts of this case fit within a conventional good faith analysis. The burden of establishing that a plan is submitted in good faith is on the debtor. Fid. & Cas. Co. of N.Y. v. Warren (In re Warren), 89

B.R. 87, 93 (9th Cir. BAP 1988); see also In re Hall, 442 B.R. at 758 (moving party bears the burden of showing sufficient facts to indicate that modification of debtors' confirmed chapter 13 plan is warranted). Further, the bankruptcy court has an independent duty to determine whether a chapter 13 plan is proposed in good faith. Villanueva v. Dowell (In re Villanueva), 274 B.R. 836, 841 (9th Cir. BAP 2002).

Here, the record shows Debtors failed to meet their burden of proving that the shortened term of their plan was made in good faith under the Goeb standards. Those standards clearly require more than a showing of Debtors' subjective good faith. Simply put, Debtors' contribution of a portion of their increased income to their plan for a three year period does not amount to per se good faith.

Indeed, the bankruptcy court considered whether Debtors' proposal was made in good faith in light of the relevant militating factors. The court found Debtors were not retiring, leaving the employment market or changing jobs in some other way nor did they contend they had health issues. Debtors do not dispute these findings on appeal nor do they point to any facts in the record which showed they would be unable to continue their increased payments beyond the 36 month period that they proposed. Although the doctrine of res judicata did not prevent Debtors from shortening the term of their plan, they advanced no legitimate reason for doing so under the circumstances.

As a consequence, in light of Debtors' increased income, allowing them to shorten the term for their plan would be an inequitable result under In re Goeb. See also In re Stitt, 403

-20-

B.R. 694, 703 (Bankr. D. Idaho 2008) (noting that the "good faith requirement of § 1325(a)(3) gauges the overall fairness of a debtor's treatment of creditors under a plan"). In addition, Debtors' proposed modification to shorten the term of the plan when their income significantly increased is inconsistent with the overall policies of chapter 13 and the enactment of BAPCPA, which "has been read to tighten, not loosen, the ability of debtors to avoid paying what can reasonably be paid on account of debt." In re Kamell, 451 B.R. 505, 508 (Bankr. C.D. Cal. 2011). As the bankruptcy court aptly noted, "there is clearly more that could—in 'good faith'—be paid to their creditors." In re Mattson, 456 B.R. at 79.

Finally, we emphasize that the continued absence from § 1329(b)(1) of any reference to § 1325(b) is conclusive as to whether a debtor may modify his or her plan to reduce the term below the applicable commitment period required for an original plan. "Congress is presumed to act intentionally and purposefully when it includes language in one section of the Bankruptcy Code, but omits it in another section." In re Ewers, 366 B.R. at 143. Congress, aware of the function of the means test in chapter 13 relating to confirmation of original plans, did not amend § 1329(b)(1) to incorporate § 1325(b). As noted by the bankruptcy court in In re Ewers, "BAPCPA added the term [applicable commitment period] in § 1329(c), which deals with the maximum length of a modified plan, obviously as a conforming amendment. . . . 'Three years' in § 1329(c) was switched to 'the applicable commitment period under section 1325(b)(1)(B),' no doubt, to be harmonious with § 1325(b)." Id. at 143. Having

-21-

taken the opportunity to amend § 1329(c), Congress's decision not to amend § 1329(b) may be seen as deliberate.

Therefore, the plain language of § 1329(a)(2), which authorizes modifications to extend or reduce the time for payments under the plan, continues to control. As the bankruptcy court correctly acknowledged, a debtor's circumstances may justify a reduction in plan length. Mattson, 456 B.R. at 83 (citing In re Ewers, 366 B.R. 139).[12] In the end, the appropriateness of any particular modification is subject to the court's discretion, as limited by § 1329.

## VI. CONCLUSION

For the reasons stated, we conclude that the bankruptcy court did not abuse its discretion in denying Debtors' proposed modification to shorten the term of their plan. Accordingly, we AFFIRM.

---

[12] Although the trustee cites Maney v. Kagenveama (In re Kagenveama), 541 F.3d 868 (9th Cir. 2008), we do not find this decision persuasive for purposes of this appeal. As the bankruptcy court in In re Stitt observed, "while Kagenveama guides bankruptcy courts in interpreting certain new terms in the Code, it does not require them to retreat from the pointed, case-by-case analysis used to determine whether a plan has been proposed in good faith as formulated in its earlier decisions." 403 B.R. at 702.

-22-