**IN RE: Gregory LADIEU, Debtor.**

**Case #14–10551**

United States Bankruptcy Court, D. Vermont.

Signed April 8, 2016

As Corrected April 11, 2016

David W. Lynch, Esq., Kohn Rath Danon & Lynch, Hinesburg, Vermont, For the Debtor

Andre D. Bouffard, Esq., Downs Rachlin Martin PLLC, Burlington, Vermont, For Vobile, Inc.

## MEMORANDUM OF DECISION

*DENYING CREDITOR VOBILE INC.'S REQUEST TO REOPEN CONFIRMATION PROCEEDINGS, OVERRULING CREDITOR VOBILE INC.'S OBJECTION TO DEBTOR'S MOTION TO MODIFY, AND SUA SPONTE RELIEVING DEBTOR OF THE DUTY TO FILE MONTHLY INCOME STATEMENTS*

Colleen A. Brown, United States Bankruptcy Judge

The largest unsecured creditor in this case, Vobile, Inc. ("Vobile"), has asked the Court to (1) reopen confirmation proceedings and declare a previously entered confirmation order is not final, in response to a recent U.S. District Court decision dismissing its appeal of an interlocutory order; and (2) deny the Debtor's motion to modify his confirmed plan, alleging (a) the proposed modified plan does not take into account all of the Debtor's non-filing spouse's income in computing the plan payment, (b) the Debtor has not demonstrated an unanticipated and substantial change in financial condition post-confirmation, and (c) the Debtor has not proposed the modified plan in good faith.

For the reasons set below, the Court declares the confirmation order is final, denies Vobile's request to reopen the confirmation proceedings, and overrules Vobile's objection to the Debtor's motion to modify his plan.

Additionally, since those findings persuade the Court that a reporting duty previously imposed upon the Debtor is no longer necessary, the Court relieves the Debtor of that duty, as explained below.

### JURISDICTION

This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Order of Reference entered by Chief Judge Christina Reiss on June 22, 2012. The Court declares this contested matter is a core proceeding under 28 U.S.C. § 157(b)(2)(L), in which this Court may enter a final judgment.

### ISSUES PRESENTED

The four legal issues before the Court are: (1) whether the District Court's order dismissing Vobile's interlocutory appeal warrants a reopening of the confirmation proceeding in this case, and as a corollary, whether the confirmation order is a final order; (2) the extent to which the non-Debtor spouse's income must be devoted to the Debtor's modified Chapter 13 plan; (3) whether the Debtor must demonstrate an unanticipated and substantial change in financial circumstances post-confirmation in order to modify his confirmed plan; and (4) whether the Debtor's modified plan is proposed in good faith.

### PROCEDURAL HISTORY

This case has an extraordinarily long and litigious procedural history for an individual wage earner Chapter 13 case. The Court sets forth only that portion of the procedural history which is essential to resolution of the four legal issues presented.

On October 9, 2014, the Debtor filed a Chapter 13 petition and plan (docs. ## 1, 2). The case Trustee recommended confirmation of the plan as filed. The Court held three hearings to determine whether the Debtor's plan met the requirements of confirmation under Chapter 13. The first confirmation hearing was held on November 18, 2014, at which Vobile's predecessor, Rentrak Corp. ("Rentrak"), objected. The second confirmation hearing was scheduled for January 21, 2015. Two weeks prior to this date, Rentrak filed four consecutive motions in the span of two days—a motion to extend time to object to the Debtor's discharge, a motion to dismiss the case, an objection to confirmation of the Debtor's plan, and a motion to expedite the hearing—which prompted the Debtor to respond; and which, in turn, elicited a reply from Rentrak (docs. ## 24–32). Except for the motion to expedite hearing, all of Rentrak's filings alleged the Debtor filed his bankruptcy case in bad faith with the intent to mislead the Court and creditors with respect to the Debtor's true financial condition (docs. ## 24–26). Prior to the January 21st hearing, the Debtor also filed an amended plan (doc. # 37, the "Plan") along with amended Schedules I and J (docs. ## 38, 41). The January 21st hearing was held, and based on the representations of the parties and other outstanding issues, the Court set an evidentiary hearing for February 11, 2015 to address Rentrak's motion to dismiss the case and Rentrak's objection to confirmation of the Debtor's plan. Soon thereafter, Rentrak filed another motion to dismiss the case (doc. # 47), again based upon allegations of bad faith, and an objection to the Debtor's (newly amended) Plan (doc. # 48). The evidentiary hearing went on as scheduled, and the scope of legal arguments and witness testimony included the topics raised in Rentrak's two most recent filings.

At the hearing, the parties delved deeply into the employment of the Debtor and non-Debtor spouse (the "Spouse"), the nature and predictability of their self-employment income, the family's household income and expenses, and the family's ordinary and extraordinary financial needs. The crux of Rentrak's argument, and the backdrop it set for this evidentiary hearing, was that the Debtor's effort to obtain confirmation of the Plan, notwithstanding what Rentrak characterized as a substantial post-petition increase in the Debtor's household income, constituted bad faith. Rentrak's counsel argued "bad faith on the part of the Debtor in misrepresenting the status of his finances, particularly his income, as well as his expenses, . . . certainly would be a violation of his good faith in terms of filing accurate statements" (doc. # 86, p. 4). The Debtor credibly testified that both he and his wife had fluctuating employment and were working opposite shifts, which made it difficult to communicate together, and that two of his four children had special needs, which made household management a challenge (doc. # 86, p. 79). All of the disputed expenses were scrutinized at the hearing, including the price paid for kerosene, income tax obligations, and the wife's student loans. After the evidentiary hearing, the parties reported no further issues to bring before the Court, and the matter was deemed fully submitted.

On June 1, 2015, the Court issued a memorandum of decision and order denying Rentrak's motion to dismiss, overruling Rentrak's objection to confirmation, and directing the Debtor to file monthly income statements [1] (docs. ## 74, 75); that decision also directed the Chapter 13 Trustee to file a proposed confirmation order (the "June 1 Order"). On June 15, 2015, Vobile [2] filed a timely appeal of that decision.

While the appeal was pending, the Chapter 13 case continued. On July 13, 2015, the Trustee filed a proposed confirmation order. On July 16, 2015, Vobile filed yet another document captioned as an objection to confirmation (doc. # 88), which was actually an objection to just the "special provisions" paragraph of the proposed confirmation order and the Debtor's duty to file monthly statements. On July 17, 2015, this Court entered the confirmation order (doc. # 90, the "Confirmation Order"), modified to include some of the language Vobile had requested.

Thereafter, on September 3, 2015, the Debtor filed a motion to modify his Plan, and the order confirming it, to pay approved attorney fees through the plan by reducing the dividend to unsecured creditors by 12% (doc. # 98). There were no

---

1. Although it is uncommon to require monthly reports in a consumer Chapter 13 case, in response to significant questions at the outset of the case regarding the actual amount of the Debtor's income and expenses, both individually and as part of his household, and the uncertainty about future (particularly self-employment) income, the Court directed the Debtor to file monthly statements (doc. # 75):

 IT IS FURTHER ORDERED that, commencing on June 15, 2015 and continuing for as long as the Debtor's spouse continues to be self-employed (whether it is full-time or part-time), the Debtor shall file monthly statements by the 15th of each month, itemizing the Debtor's spouse's income, broken down by source, with a statement of expenses from self-employment, including any amount of income that has been segregated for the purpose of paying self-employment (or other) taxes, for the prior calendar month; and for any month in which the Debtor earns overtime pay, he shall also file a statement by the 15th of each month disclosing overtime pay earned during the prior calendar month, commencing immediately.

2. Rentrak filed a notice of transfer of its claim to Vobile on April 8, 2015 (doc. # 72).

objections to the Debtor's motion, and the Court found it satisfied the requirements for plan modification. Consequently, on September 23, 2015, the Court entered an order granting the Debtor's motion to modify the plan and confirmation order (doc. # 100). The modified plan payments were identical to the payments in the Plan: $278.97 for the first 4 months, followed by $752.92 for 5 months, followed by $312.92 for 37 months, for a total of $16,643.52 to be paid over 46 months.

About one month later, on October 28, 2015, Vobile filed its own motion to modify the Debtor's plan (doc. # 104, "Vobile's Motion"), and the Debtor objected (doc. # 107). After two hearings on Vobile's Motion and the parties' multiple supplemental filings, the Debtor filed a second motion to modify his plan on February 22, 2016 (doc. # 136; the "Debtor's Motion"). The Debtor's Motion proposes to (i) extend the plan term to 60 months, (ii) increase the plan payment to $525 per month, (iii) increase the attorney's fees to cover the costs for litigation with Vobile, and (iv) reduce the dividend to unsecured creditors to 4% (doc. # 136, p. 2). Vobile objected to the Debtor's Motion asserting some of the same arguments it had raised prior to and at the evidentiary hearing. It took the position that the recent increase in income of both the Debtor and Spouse warranted a greater increase in plan payments, the Debtor's failure to demonstrate a substantial and unanticipated increase in expenses precluded the Debtor from modifying his plan, and the Debtor's modified plan was not proposed in good faith (doc. # 138, "Vobile's Objection").

On March 8, 2016, the U.S. District Court issued an order dismissing Vobile's appeal of the June 1 Order (doc. # 137, the "USDC Order"). Based upon its interpretation of this USDC Order, on March 15, 2016, Vobile filed a "Renewed Opposition to Final Confirmation of Debtor's Chapter 13 Plan Dated January 21, 2015"—now its fourth objection to the Debtor's Plan—asserting the Confirmation Order was not final (doc. # 142, the "Supplemental Obj"). Then, on April 6, 2016, Vobile filed a "Supplemental Memorandum Requesting Reopening of Confirmation Proceedings" (doc. # 145, the "Supplemental Memo"), reasserting that the Confirmation Order was not final. The Debtor filed a response in opposition, arguing that the Confirmation Order was indeed final as evidenced, *inter alia,* by Vobile's own motion to modify the confirmed plan (doc. # 146); the Trustee joined the Debtor's opposition.

### CONTROLLING STATUTES

The issues presented turn on the requirements of the Bankruptcy Code with respect to confirmation and modification of Chapter 13 plans. The pertinent modification statute provides as follows:

§ 1329. **Modification of plan after confirmation**

(a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, **upon request of the debtor, the trustee, or the holder of an allowed unsecured claim,** to—

(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

(2) extend or reduce the time for such payments;

. . .

(b) (1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.

(2) The plan as modified becomes the plan unless, after notice and a

hearing, such modification is disapproved.

(c) A plan modified under this section may not provide for payments over a period that expires after the applicable commitment period under section 1325(b)(1)(B) after the time that the first payment under the original confirmed plan was due, unless the court, for cause, approves a longer period, but the court may not approve a period that expires after five years after such time.

11 U.S.C. § 1329 (2016) (emphasis added). The germane subsections of 1322 and 1325 provide:

### § 1322. Contents of plan

(a) The plan—

(1) shall provide for the submission of all or such portion of future earnings or other future **income of the debtor** to the supervision and control of the trustee as is necessary for the execution of the plan;

(2) shall provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim;

(3) if the plan classifies claims, shall provide the same treatment for each claim within a particular class; and

(4) notwithstanding any other provision of this section, may provide for less than full payment of all amounts owed for a claim entitled to priority under section 507(a)(1)(B) only if the plan provides that all of the debtor's projected disposable income for a 5–year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

(b) Subject to subsections (a) and (c) of this section, the plan may—

(1) designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated; however, such plan may treat claims for a consumer debt of the debtor if an individual is liable on such consumer debt with the debtor differently than other unsecured claims;

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

(3) provide for the curing or waiving of any default;

(4) provide for payments on any unsecured claim to be made concurrently with payments on any secured claim or any other unsecured claim;

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;

(6) provide for the payment of all or any part of any claim allowed under section 1305 of this title;

(7) subject to section 365 of this title, provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of

the debtor not previously rejected under such section;

(8) provide for the payment of all or part of a claim against the debtor from property of the estate or property of the debtor;

(9) provide for the vesting of property of the estate, on confirmation of the plan or at a later time, in the debtor or in any other entity;

(10) provide for the payment of interest accruing after the date of the filing of the petition on unsecured claims that are nondischargeable under section 1328(a), except that such interest may be paid only to the extent that the debtor has disposable income available to pay such interest after making provision for full payment of all allowed claims; and

(11) include any other appropriate provision not inconsistent with this title.

11 U.S.C. § 1322(a) & (b) (2016) (emphasis added).

### § 1325. Confirmation of Plan

(a) Except as provided in subsection (b), the court shall confirm a plan if—

(1) **The plan complies with the provisions of this chapter** and with the other applicable provisions of this title;

(2) any fee, charge, or amount required under chapter 123 of title 28, or by the plan, to be paid before confirmation, has been paid;

(3) **the plan has been proposed in good faith** and not by any means forbidden by law;

(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;

(5) . . .

(6) **the debtor will be able to make all payments under the plan and to comply with the plan;**

(7) the action of the debtor in filing the petition was in good faith;

(8) . . .; and

(9) the debtor has filed all applicable Federal, State, and local tax returns as required by section 1308.

. . .

11 U.S.C. § 1325(a) (2016) (emphasis added). Additionally relevant to the argument Vobile proffers is the definition of current monthly income:

(10A) The term "current monthly income"—

(A) means the average monthly income from all sources that the debtor receives (**or in a joint case the debtor and the debtor's spouse receive**) without regard to whether such income is taxable income, derived during the 6–month period . . .

(B) **includes any amount paid by any entity other than the debtor** (or in a joint case the debtor and the debtor's spouse), **on a regular basis for the household expenses of the debtor** or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent) . . .

11 U.S.C. § 101(10A)(A) & (B) (2016) (emphasis added).

## DISCUSSION

### I. Vobile's Request for Relief Related to the District Court's Order Dismissing its Appeal

The USDC Order dismissing Vobile's appeal of the June 1 Order states:

The *non-finality* of the Bankruptcy Court's June 1, 2015 Order is apparent from the Order itself, which requires Ladieu to file monthly statements verifying his family's income to ensure that his disposable income is correctly calculated. *That provision implies that the Bankruptcy Court* ***may*** *reconsider its ruling on the determination of Ladieu's disposable income. Indeed, the recalculation of Ladieu's disposable income is an issue currently pending before the Bankruptcy Court, and the June 1, 2015 Order is therefore not a final determination.* ... Because the disclosure of Ladieu's projected disposable income affects whether he filed the Chapter 13 plan in good faith, that issue similarly lacks a final determination, and cannot be determined by this court at this time. ...

Dismissal of Vobile's appeal is appropriate for the further reason that a decision by the Bankruptcy court may render the challenges Vobile raises moot. ... "The party who appeals without seeking to avail himself of [a stay in the Bankruptcy Court proceedings] does so at his own risk" that the appeal may become moot. In this case no stay was requested before the Bankruptcy Court after the challenged orders were issued. *Because the Bankruptcy Court modified the Debtor's Chapter 13 plan after Vobile filed the instant appeal and may modify it again, any relief this court orders will pertain to a historic version of the plan, and will constitute an advisory opinion that does not afford "effective" relief.*

Doc. # 137, pp. 2–3 (emphasis added; citations omitted).

Vobile's Supplemental Obj describes the import of the USDC Order as follows:

By Order dated March 7, 2016, the District Court dismissed Vobile's appeal on grounds that the Confirmation Order is not a final order ***because it is conditional*** on the filing of income reports by Debtor to permit the Court to determine if ***the plan, as conditionally confirmed,*** dedicates all projected disposable income for the applicable commitment period, and was filed in good faith.

Doc. # 142, p. 1 (emphasis added). Based upon this perception of the Order's import, Vobile entreats the Court to grant it three types of relief. The first type of relief it seeks is for the Court to "deny final confirmation" since the June 1 Order was merely conditional (doc. # 142, p. 7). Vobile reiterates this assertion in its Supplemental Memo, insisting that per the USDC Order, the Confirmation Order is not final, and consequently, the Court should "reopen proceedings on final confirmation of the Debtor's Plan dated January 21, 2015" (doc. # 145, p. 3). Second, Vobile argues that given the ruling set out in the USDC Order, the two motions to modify pending before the Court are "premature" because: "Assuming this Court concurs that the District Court Ruling now requires a determination whether the [January 21, 2015 plan] complies with the disposable income requirement of § 1325(b)(1)(B), and the good faith requirement of § 1325(a)(3), the pending motions to modify may be moot. Accordingly, the Court should hold these two motions in abeyance until a ruling is made on final confirmation of the Plan, as contemplated by the District Court Ruling" (docs. ## 142, 145). And third, Vobile argues that even if the Court were to consider the Debtor's proposed modified plan, it must deny it confirmation because

that plan fails to satisfy § 1325(b)(1)(B), i.e., it does not devote all of the Debtor's projected household disposable income to the trustee for distribution to creditors through the plan (doc. # 142, pp. 5–6).

■ Vobile's arguments fail for several reasons. First, as a technical but significant matter, Vobile confuses two separate orders. It states it filed an appeal from the Order dated July 17, 2015 to the District Court (doc. # 142, p. 1). That is factually incorrect, as Vobile appealed the June 1 Order (doc. # 75); it did not appeal the July 17, 2015 confirmation order (doc. # 90). Additionally, Vobile misconstrues the USDC Order and conjures an opposition to confirmation based upon a notion that the Court confirmed the plan on a "conditional basis" (doc. # 142, p. 1). However, the USDC Order did not characterize the June 1 Order as "conditional." Moreover, the USDC Order did touch upon this point in holding that Vobile's appeal might also be moot since the plan at issue was already confirmed and modified post-confirmation. Lastly, and most importantly, Vobile is simply wrong in asserting the Confirmation Order is not final. This issue was recently addressed in *Bullard v. Blue Hills Bank*, —— U.S. ——, 135 S.Ct. 1686, 191 L.Ed.2d 621 (2015), where the Supreme Court distinguished plan confirmation and case dismissal, which are final, from denial of confirmation, which is not final. In that case, the debtor argued bankruptcy courts conduct a separate proceeding each time they review a proposed plan, and therefore their order either confirming or denying a plan terminates the proceeding and must be treated as final and immediately appealable. The Supreme Court held otherwise:

> The relevant proceeding is the process of attempting to arrive at an approved plan that would allow the bankruptcy to move forward. This is so, first and foremost, because only plan confirmation—

or case dismissal—alters the status quo and fixes the rights and obligations of the parties. When the bankruptcy court confirms a plan, its terms become binding on debtor and creditor alike. 11 U.S.C. § 1327(a). Confirmation has preclusive effect, foreclosing relitigation of "any issue actually litigated by the parties and any issue necessarily determined by the confirmation order." 8 *Collier* ¶ 1327.02[1][c], at 1327–6; *see also United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 275, 130 S.Ct. 1367, 176 L.Ed.2d 158 (2010) (finding a confirmation order "enforceable and binding" on a creditor notwithstanding legal error when the creditor "had notice of the error and failed to object or timely appeal"). Subject to certain exceptions, confirmation "vests all of the property of the [bankruptcy] estate in the debtor," and renders that property "free and clear of any claim or interest of any creditor provided for by the plan." §§ 1327(b),(c). Confirmation also triggers the Chapter 13 trustee's duty to distribute to creditors those funds already received from the debtor. § 1326(a)(2).

When confirmation is denied *and the case is dismissed as a result,* the consequences are similarly significant. Dismissal of course dooms the possibility of a discharge and the other benefits available to a debtor under Chapter 13. Dismissal lifts the automatic stay entered at the start of bankruptcy, exposing the debtor to creditors' legal actions and collection efforts. § 362(c)(2). And it can limit the availability of an automatic stay in a subsequent bankruptcy case. § 362(c)(3).

Denial of confirmation with leave to amend, by contrast, changes little. The automatic stay persists. The parties' rights and obligations remain unsettled.

The trustee continues to collect funds from the debtor in anticipation of a different plan's eventual confirmation. The possibility of discharge lives on. "Final" does not describe this state of affairs. An order denying confirmation does rule out the specific arrangement of relief embodied in a particular plan. But that alone does not make the denial final any more than, say, a car buyer's declining to pay the sticker price is viewed as a "final" purchasing decision by either the buyer or seller. "It ain't over till it's over."

*Bullard v. Blue Hills Bank*, —— U.S. ——, 135 S.Ct. 1686, 1692–93, 191 L.Ed.2d 621 (2015)(emphasis original; some citations omitted); *see In re Layo*, 460 F.3d 289, 293 (2d Cir.2006)(holding orders confirming Chapter 13 plans are final judgments on the merits). Thus, Vobile's characterization of the relief sought—a "final confirmation"—is somewhat of a misnomer. Prior to issuing the Confirmation Order, this Court heard all of Vobile's multiple objections to confirmation of the January 21, 2015 plan, held three hearings, and carefully considered the statutory requirements, including the disposable income analysis under § 1325(b) and good faith requirement under § 1325(a)(3).

Vobile's second request in connection with the USDC Order is that the Court has to hold the motions to modify in abeyance. However, since confirmation of the plan has come and gone, and the Confirmation Order concluded the disposable income and good faith analyses, the Court finds no basis for granting Vobile's second

prayer for relief and will turn its attention to the modified plans.

■ Vobile's last request for relief related to the USDC Order is premised not upon the January 21, 2015 Plan, but rather on the Debtor's proposed modified plan currently before the Court. Vobile argues that this proposed plan must be denied confirmation because it fails to meet the disposable income test under § 1325(b)(1). However, Vobile's underlying rationale that a plan can only be modified if it satisfies this test is not legally sound. If the Court were considering confirmation of an initial plan, § 1325(b) would apply, and the Court would need to assess whether the Debtor is devoting all his disposable income, as that term is defined for bankruptcy purposes, to plan payments. Here, the issue is raised in the context of modification of a confirmed plan, where § 1325(b) does not apply, as Vobile itself has acknowledged,[3] and case law observes.

> The Court can only assume that the exclusion of § 1325(b) [from § 1329] was intentional and Congress never intended to require a bankruptcy court to conduct a new disposable income analysis as a basis for a proposed post-confirmation modification ... [I]t was never Congress's intention that increases or decreases in a debtor's monthly expenses, alone, would be grounds to revisit a confirmed chapter 13 plan. The disposable income analysis conducted at the time of the original plan confirmation, although it is an estimate, should be afforded some finality and should not be disturbed solely on the basis of fluctuations in a debtor's expenses.

**3.** Vobile's Objection states: "Even though the disposable income test of § 1325(b)(1) may not be expressly applicable in the context of a plan modification under § 1329 ..." (doc. # 138, p. 8). Moreover, post-confirmation, at the hearing held on November 18, 2015, Vobile's counsel unequivocally stated that in the

context of plan modification, "the projected disposable income analysis under § 1325(b) does not apply [and I am] not advocating the Court to do another projected disposable income analysis as if [it] were confirming a plan in the first instance."

*In re Salpietro,* 492 B.R. 630, 637–38 (Bankr.E.D.N.Y.2013)(citing *In re Forbes,* 215 B.R. 183 (8th Cir. BAP 1997)); *see also In re Etwaroo,* 546 B.R. 516, 521 (Bankr.E.D.N.Y.2016) ("[T]he 'projected disposable income' analysis of § 1325(b), when accorded the requisite finality due to the confirmation process, is intended to result in Chapter 13 confirmed plans that balance the priorities of a fresh start for debtors and the repayment of creditors, without the need for burdensome re-litigation triggered by every fluctuation in a debtor's financial situation."). This is a critical distinction: there is no plan before the Court for confirmation at this time, only motions to modify. Thus, Vobile's argument that the Debtor's proposed modified plan cannot be confirmed on the basis of its not satisfying § 1325(b) has no merit and is contrary to well-established law.

Notwithstanding Vobile's protestations to the contrary, the USDC Order does nothing more than dismiss Vobile's appeal. The USDC Order does not direct any further action by this Court, or make findings which require the reopening of the confirmation proceeding. None of the arguments Vobile propounds based upon the USDC Order justify relief. Accordingly, the Court denies Vobile's request to reopen the confirmation proceedings and all other relief it seeks in connection with the orders this Court has entered confirming and modifying the Debtor's plan.

## II. Vobile's Objection to the Debtor's Second Motion to Modify

■ Once a plan is confirmed but before it is completed, § 1329 allows debtors, unsecured creditors, and trustees to seek a modification of the otherwise final plan.[4] The scope of modification is limited, however. A party may only seek to modify the plan to (1) increase or decrease payments to a particular class of creditors provided for by the plan, (2) extend or reduce the length of the plan (but not beyond the 60th month), (3) alter the amount of a distribution to a creditor to take account for any payment to such creditor outside the plan, or (4) decrease plan payments if the debtor experiences an increase in health insurance costs but only where those costs were not previously captured in the disposable income test of § 1325(b). *See* § 1325(a)(1)–(4); *In re Salpietro,* 492 B.R. at 634. Bankruptcy courts have broad discretion to consider motions to modify a confirmed plan. *In re Etwaroo,* 546 B.R. at 521–22. However, courts must balance this discretion with a respect for the finality of the original confirmed plan. *Id.* Thus, when someone other than the debtor seeks to modify a confirmed plan, the Court will review a proposed modification only after the Court finds that a debtor has acted in bad faith, or is not in compliance with their plan, and then conduct a new income and expense analysis to determine a debtor's actual ability to pay. *Id.*

1. *Does the Post–Confirmation Increase in the Income of the Debtor and the Spouse Warrant Denial of the Debtor's Motion?*

■ Post-confirmation, the Debtor's total monthly household income increased from $6,334.74 to $10,169.04; the Debtor's income increased from $2,202.74 to $2,509.05, and the Spouse's income increased from $4,132 to $7,659.99 (docs. ## 38, 122). Vobile objects to the Debt-

---

4. Originally the Code provided this right to debtors only; in 1984, Congress expanded the list of parties eligible to seek modification to include the chapter 13 trustee and holders of allowed unsecured claims. *See* Bankruptcy Amendments and Federal Judgeship Act of 1983, H.R. 5174, 98th Cong. § 2 (1984).

or's modified plan because the proposed new plan payment does not reflect the entire amount of increased household income (doc. # 138, p. 7).

■■■ The Court must begin its analysis of the argument by observing that nothing in the Bankruptcy Code obligates anyone other than the debtor to fulfill the requirements of a confirmed plan. *In re Malewicz*, 457 B.R. 1, 7 (Bankr.E.D.N.Y. 2010). This is apparent from the straightforward statutory language governing plan confirmation: "the court shall confirm a plan if . . . the **debtor** will be able to make all payments under the plan and to comply with the plan." § 1325(a)(6) (emphasis added). It is generally accepted that the requirements of § 1325(b) do not apply to motions to modify. *In re Forbes*, 215 B.R. 183 (8th Cir. BAP 1997). Moreover, even if the Court were to determine the specific facts of this case warrant an assessment of the non-debtor spouse's income, the mere determination that she previously contributed to household expenses cannot in and of itself be the basis to require her to contribute such income to the plan. *In re Malewicz*, 457 B.R. at 7. Since only the debtor is required to make plan payments, the non-debtor spouse's income is merely a factor in calculating the debtor's disposable income; the non-debtor spouse's contributions to household expenses are not "specifically 'pledged' or earmarked for turnover to the trustee." *Id.* The non-debtor spouse is not legally bound to contribute such income to fund the plan. *Id.*

Vobile ignores this crucial distinction between the Debtor's financial duty to fund the plan and the Spouse's lack of any such duty. In its objection to the Debtor's Motion, Vobile argues that because there has been a substantial increase in household income, there should at least be a corresponding percentage increase in plan payments, which would inevitably be funded, in significant part, from the Spouse's (increased) income. In support of this argument, Vobile points out that the Spouse's income was part of the income dedicated to the plan, and the Spouse's personal expenses were included in the Debtor's household expenses, at the time of confirmation (doc. # 138, p. 9). Vobile further argues that "given the budget underlying the confirmed plan, there is a strong good faith basis for continuing to include all spousal income as income of the Debtor under a modified plan, especially if all of the spouse's separate debts are to be paid under the plan before creditors get paid" (doc. # 138, p. 14). Vobile offers no case law or statutory authority in support of these arguments.

When this Court confirmed the Debtor's plan on July 17, 2015, the Schedules I and J in the record indicated the Debtor's gross monthly income was $2,202.74, the Spouse's income was $4,132.00, and the Spouse's contribution to household expenses was $3,776 (72% of the total $5,172.82 joint household expenses then listed on Schedule J) (doc. # 38).[5] Subsequently, the Debtor filed amended Schedules I and J, which listed the Debtor's gross monthly income as $2,509.05, the Spouse's income as $7,659.99, and the Spouse's contribution to household expenses as $5,039.06 (71% of the total

5. Line 9 of Schedule I discloses the Spouse's contribution to household expenses as $4,132, but that amount included $356.00 of the Spouse's separate debt as indicated on Line 21 of Schedule J ($50 for pet food/care and $306.00 for monthly payments on her sole unsecured debts). Although Schedule J lists the total household expenses as $5,581.82, the Spouse's separate payments of $356.00 are excluded from this amount to arrive at the joint household expenses of $5,225.82. Thus, the more accurate statement would be that the Spouse contributed $3,776.00 toward household expenses, paying 72% of them.

$7,168.31 in joint household expenses) (doc. # 122).[6]

Along with the general increase in the Debtor's income, the Spouse's income, and certain household expenses, the amended schedules also reflect an increase in the amount the Spouse chose to reserve from her portion of the income, for her own personal use. A comparison of the two Schedule Js indicates an increase in the Spouse's "reserved income" from $306.00 to $2,620.93. This increase is specifically attributed to the following monthly payments: (i) a $181.39 increase in pet food/care, (ii) a $95.54 increase in the Spouse's unsecured monthly debt, (iii) a new expense of $435.00 for her student loan, and (iv) another new expense of $1,553.00 the Spouse earmarks as "separate marital income" from a portion of her earnings "for the purpose of pursuing a master's degree over next two years, tuition, and other expenses" (doc. # 122, p. 7). The bottom line is that at the time of confirmation, the Spouse was contributing $3,776.00 to joint household expenses and paying 72% of the total household expenses; and as of the date of the Debtor's Motion, the Spouse was contributing $7,056.45 to joint household expenses and paying 71% of the total household expenses.

This increase in the Spouse's income, and in the amount of her income she spends on her own expenses, has no bearing on the Debtor's duty to make plan payments and cannot be the basis for de-

nying a motion to modify that otherwise satisfies the statutory requirements. To the extent Vobile argues the Debtor's Motion must be denied because less than all of the Spouse's income is being used to cover household expenses, that argument has no merit. The Spouse's separate expenses are offset by her own income, which is beneficial to the Debtor, and is indeed included in the budget in Schedule I. Moreover, to the extent the Spouse has income in excess of what she earned pre-confirmation, and, crucially, in excess of the amount she was regularly contributing for household expenses, she is free to use that income however she wishes for two reasons. First, as stated above, she is not the Debtor in this case, and this Court cannot hold her to the same standard as a debtor when she did not file for bankruptcy relief. Second, her income is only relevant to a Chapter 13 case before confirmation of a plan, and only to the extent it helps pay for household expenses to help calculate the Debtor's disposable income. *See* §§ 101(10A)(B) and 1325(b)(2); *In re Quarterman*, 342 B.R. 647, 651 (Bankr. M.D.Fla.2006) ("[i]f [the non-debtor spouse's] income is not (1) expended regularly (2) on household expenses, then it is not included in the debtor's current monthly income."). She is free to bring new expenses into the household if she chooses to pay them; that does not diminish the Debtor's ability to fund the plan and hence

---

**6.** As with the above calculation, some clarification is required here. The Debtor lists the Spouse's income on Schedule I as $7,659.99 and also states not all that income is available for the support of the household. Line 21 of Schedule J indicates that the Spouse reserves $2,620.93, for herself and payment of her expenses. She itemizes the expenses as follows: $231.39 for pet food/care, $401.54 for payments on her unsecured debt, $435.00 for payment of her student loan debt, and $1,553.00 for education and career develop-

ment type expenses. The new figures reflect the Spouse contributing a total of $5,039.06 towards household expenses. The joint household expenses are $7,168.31 after accounting for the Spouse's separate expenses. ($9,677.38 total household expenses shown on Schedule J filed on January 5, 2016, minus the Spouse's sole expenses of that date in the amount of $2,620.93, equals $7,056.45.)Thus, the Spouse's contribution constitutes payment *of 71% of the joint household expenses* ($ 5,039.06 out of $7,056.45).

is outside the scope of what this Court would consider germane to modification.

■ Vobile also argues the monthly payment on an auto loan for which the Debtor is not contractually obliged should not be part of the household expenses and should instead be treated as one of the Spouse's separate debts (doc. # 38, p. 10). However, if the Spouse uses this vehicle to transport the children or the whole family, it is properly treated as a "household expense." *See In re Montalto,* 537 B.R. 147, 149 (Bankr.E.D.N.Y.2015) (non-household expenses are construed to mean expenses that are "purely personal" to the non-debtor spouse); *see also In re Rable,* 445 B.R. 826, 829 (Bankr.N.D.Ohio.2011) (an expenditure purely personal in character to the nondebtor spouse (e.g., a student-loan debt) would be allowed a marital adjustment ... thereby decreasing a debtor's disposable income). Given the size of the Debtor's family, including 4 children, two of whom have special needs, it would appear the Spouse's car serves the entire household and not just the Spouse, and Vobile has not demonstrated otherwise.

■ The final flaw with this part of Vobile's Objection is that it focuses on the wrong party: it is the Debtor's contribution to household expenses which is the essential consideration in connection with the funding of the plan and the merits of the Debtor's Motion. The Debtor experienced a $306.31 increase in his own income (docs. ## 38, 122). Vobile would demand that the Debtor be required to apply the full amount of this increase to the Plan payment. The Debtor's Motion proposes a new monthly plan payment of $525.00

which reflects an increase of $207.08 from his current plan payment. The balance of the increase in the Debtor's income is allocated to increased expenses, as shown on the most recently filed Schedule J (doc. # 122), and, according to his testimony, to medical expenses related to a "lifelong illness" of one of his children. The Court finds the increased expenses reasonable and finds the Debtor's allocation of two-thirds of the increase in his income to his proposed plan payment reasonable, based upon the record in this case.

In sum, the component of Vobile's Objection asserting the Debtor's Motion must be denied because either the Debtor or the Spouse is not contributing enough of his or her increased income towards the modified plan is wholly unavailing.

2. *Must the Motion to Modify Be Denied Because the Debtor Failed to Show a Substantial and Unanticipated Change in Financial Circumstances?*

■ The second aspect of Vobile's Objection is that the Debtor failed to demonstrate a substantial and unanticipated change in his financial circumstances subsequent to confirmation of the prior plan, and this is a required condition precedent for plan modification (doc. # 138, pp. 6–9). While the Circuits are split on this issue, the majority hold that no such showing is required.[7] The Second Circuit has not squarely addressed this issue, and this is a question of first impression in the District of Vermont.

Several bankruptcy courts within the Second Circuit have considered this issue, and mirroring the Federal Courts of Appeals, they have reached conflicting re-

---

7. *Compare In re Murphy,* 474 F.3d 143 (4th Cir.2007) (requiring party seeking modification of a confirmed plan to show a substantial and unanticipated post-confirmation change in financial condition), *with In re Mattson,* 468 B.R. 361 (9th Cir. BAP 2012), *In re Meza,*

467 F.3d 874 (5th Cir.2006), *In re Barbosa,* 235 F.3d 31 (1st Cir.2000), *In re Brown,* 219 B.R. 191 (6th Cir. BAP 1998), and *In re Witkowski,* 16 F.3d 739 (7th Cir.1994) (holding no showing of substantial and unanticipated financial change is required).

sults. For example, in the Eastern District of New York the bankruptcy court has held:

> [R]es judicata principles do not apply to a proposed post-confirmation plan modification where the statute—section 1329(a)—specifically recognizes that a chapter 13 confirmation order may be revisited after it has become a final and non-appealable order [and a]s a corollary ... a "*substantial and unanticipated change*" *in a debtor's circumstances should not be the threshold test in deciding whether to consider a post-confirmation plan modification*. Such a test is not in the statute, there is no binding precedent in this Circuit which requires it, and this Court declines to adopt that standard.

*In re Salpietro*, 492 B.R. at 636 (emphasis added; citations omitted). By contrast, the Southern and Northern Districts of New York have long held a contrary view:

> The post-confirmation modification of a chapter 13 plan is controlled by 11 U.S.C. § 1329. A confirmed chapter 13 plan may be modified on application by a debtor, trustee or creditor to increase or reduce payments after confirmation but before completion of debtor's payments. A trustee's application "should be limited to situations in which there has been *a substantial change* in the debtor's income or expenses that was *not anticipated* at the time of the confirmation hearing." An unanticipated change is one where "a debtor's altered financial circumstances could not have been reasonably anticipated at the time of confirmation by the parties seeking modification." A substantial change in circumstances can be increased income or receipt of a large sum of money.

*In re Solis*, 172 B.R. 530, 532 (Bankr.S.D.N.Y.1994)(emphasis original; citations omitted); *accord In re Furgeson*, 263 B.R. 28 (Bankr.N.D.N.Y.2001): *see In re Palmer*, 419 B.R. 162 (Bankr.N.D.N.Y. 2009).

Interestingly, court decisions determining whether a substantial and unanticipated change in financial circumstance is a required condition precedent to modify a confirmed plan under § 1329(a) all begin their analysis with the observation that there is no statutory mandate for a change in circumstances and then proceed to scrutinize the question as if there are just two possible answers: to impose the requirement or not impose it. The path they choose at that fork informs the track they follow in their analysis of the *res judicata* impact of the order confirming the plan. This Court finds that approach to be premised on a false dichotomy. Chapter 13 specifies in great detail the rights and duties of both the debtor and creditors in each case, including a straightforward formula for the plan, a clear role for each party in the confirmation process, and an unequivocal right to modify post-confirmation. It creates a new contract for consumer debtors and their creditors which assures the creditors of equal treatment and grants the successful debtor a fresh start. *See* David G. Carlson, *Modified Plans of Reorganization and the Basic Chapter 13 Bargain*, 83 Am. Bankr.L.J. 585 (2009). During the case, debtors and creditors have radically different roles, rights, and responsibilities. If there is to be a jurisprudential limitation imposed on the right to modify a confirmed plan, this Court is convinced that limitation should be carefully tailored to align with the rights of each of the parties who may seek modification, and the voluntary nature of Chapter 13.

■ Chapter 13 relief is an exclusively voluntary form of a bankruptcy; there are no involuntary Chapter 13 cases. *Harris v. Viegelahn*, — U.S. —, 135 S.Ct.

1829, 1835, 191 L.Ed.2d 783 (2015). When an individual files for Chapter 13 relief, they do so of their own volition to offer their creditors a repayment plan, which, if confirmed, must be deemed to represent the debtor's best effort at the time. If the debtor, for any reason, wishes to change the terms of the bargain they made in their confirmed plan, they may simply dismiss their case and file a new case and plan—without confronting the finality of the confirmation order. And, if they pursue that path, they must meet all of the requirements of confirmation. Alternatively, debtors may seek to modify their confirmed plan. If they choose to do so, they must then show the modified plan meets the requirements of § 1325(a), including that they are proposing the modified plan in good faith, complying with the provisions of Chapter 13, and affirming their ability to make all payments required by the modified plan.

By contrast, a trustee and creditors are only brought into a Chapter 13 case when an individual files a Chapter 13 petition, and their role is limited generally to filing a claim and responding to the plan. When a trustee or unsecured creditor seeks to modify a confirmed plan, the party asks the court to require the debtor to comply with a repayment arrangement the debtor did not choose. This is a dramatically different context for modification than that of debtors and warrants a different set of criteria.

*Collier* explains the divergent standards applicable to a debtor on the one hand, and a creditor or trustee on the other as follows:

> Because chapter 13 is completely voluntary, the debtor may propose any modified plan that satisfies the requirements of chapter 13. *Res judicata* does not bar such modifications by the debtor; the debtor often could achieve the same

result by dismissing the case and filing a new chapter 13 case.

. . .

> The right of the trustee or the holder of an unsecured claim should be limited to situations in which there has been an unanticipated substantial change in the debtor's income or expenses that was not anticipated at the time of the confirmation hearing. ... When a request for modification is made by the trustee or the holder of an unsecured claim, the party requesting modification must bear the burden of showing that there has been a substantial change in the debtor's ability to pay since the confirmation hearing and that the prospect of the change had not already been taken into account at the time of confirmation. A trustee or unsecured claim holder may not raise as ground for modification under this section facts that were known and could have been raised in the original confirmation proceedings because the order of confirmation must be considered *res judicata* as to that set of circumstances.

8 *COLLIER ON BANKRUPTCY,* ¶ 1329.03[5–8] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) (citations omitted). Bankruptcy scholars have also weighed in on the question and voiced support for this type of dual standard approach:

> Bankruptcy reorganization is supposed to culminate in the confirmation of a plan, which generally reconfigures debtor-creditor relations. Once confirmed, reorganization plans are supposed to be final. But, alongside the principle of finality is the principle that confirmed plans may be *modified.* ... The law of modification is in chaotic disarray.... Section 1329 does not mention *res judicata* and in fact invites modification *at any time.* Indeed, modification is itself contrary to the very idea of the plan's

*res judicata* worth. Accordingly, I will argue that *res judicata* can be set aside as irrelevant. The very logic of the chapter 13 bargain dictates the rules. When the creditors seek to modify, they must show a special kind of change—an increase in the debtor's postconfirmation disposable income. A debtor, however, may modify at any time, either because disposable income has fallen (which portends change) or because the debtor has nobly chosen to liquidate assets in order to pay the creditors—an act that chapter 13 authorizes but does not require. These two rules displace any need to infuse *res judicata* into the law of plan modification.

David G. Carlson, *Modified Plans of Reorganization and the Basic Chapter 13 Bargain*, 83 Am. Bankr. L.J. 585, 586–87 (2009) (emphasis original; citations and footnotes omitted).

Imposing a requirement on non-debtor parties to show cause for modification has the salutary effect of protecting debtors from creditors or trustees who might see modification as an opportunity for "a second bite at the apple" when they have not been successful in an objection to confirmation, *see In re Braune*, 385 B.R. 167, 172 (Bankr.N.D.Tex.2008), and eliminate the opportunity for such parties to disguise harassment in the garb of a motion to modify. *See* Tracy L. Leyba, *Hamilton v, Lanning: the Economic Implications of Forecasting a Debtor's Disposable Income*, 7 J. Bus. & Tech.L. 181, 196 (2012)("plan modification gives creditors the opportunity to harass debtors by revisiting their financial situations to attain greater returns").[8]

The Court concludes that based upon the lack of both statutory foundation and controlling jurisprudence requiring debtors to establish cause or show any change in financial circumstances as a condition to modification, the voluntary nature of Chapter 13, and the language of § 1329, the Debtor is not required to demonstrate he experienced a substantial and unanticipated change in his financial circumstances as a prerequisite to obtaining modification of his plan. Hence, the Vobile Objection based upon this argument fails.

3. *Must the Debtor's Motion be Denied Based Upon a Lack of Good Faith?*

■ The third argument in the Vobile Objection is that the Debtor's modified plan does not meet the good faith requirements of § 1325(a)(3) based upon several factors.

■ It is well settled that a debtor's proposed modified plan must satisfy the good faith requirements of § 1325(a)(3). 11 U.S.C. § 1329(b)(1); *see also In re Johnson*, 708 F.2d 865 (2d Cir. 1983); *In re Etwaroo*, 546 B.R. at 521–22 (citing *In re Fridley*, 380 B.R. 538, 543 (9th Cir. BAP 2007)). Determinations of good faith must be made on a case by case basis, and are in the sole discretion of the court. *Gen. Lending Corp. v. Cancio*, 578 Fed.Appx. 832, 834–35 (11th Cir.2014); *In re Shebel*, 22 B.R. 9, 10 (Bankr.D.Vt.1982).

Vobile asserts the Debtor's modified plan is not proposed in good faith because the Debtor fails to show a substantial and unanticipated change in circumstances post-confirmation and instead bases his modification on the fact that his actual

---

**8.** Vobile's zealous press for exactitude in the Debtor's family's budget, voluminous discovery demands, and unrelenting litigation pressure—particularly in light of the nature and tone of prior litigation between these parties—is disturbing and raises this very question. The Debtor has alleged Vobile's motion to modify was filed to harass him and in bad faith. The Court may therefore need to address this issue when it rules upon Vobile's motion to modify and the Debtor's opposition to that motion.

expenses exceeded his projected expenses (doc. # 138, pp. 5–7). This argument has no merit. As discussed above, there is no threshold requirement for a debtor to show a substantial and unanticipated change in circumstances before he or she can modify a confirmed plan. Additionally, projecting income and expenses is not an exact science, and is particularly difficult when dealing with income that is derived in part from self-employment and with expenses related to a family which includes four young children, some of whom have special needs. *See In re Salpietro*, 492 B.R. at 638 ("As is demonstrated every day in every bankruptcy court the [projected disposable income] analysis is not an exact science.") The Debtor has provided detailed explanations for the increases in household expenses (doc. # 123, Ex. C), which the Court finds credible in light of the record in this case and prior testimony of the Debtor as to his budget, finances, and daily household demands. Vobile further argues that in the absence of any substantial, unanticipated circumstances, the Debtor's proposal to reduce the amount of his monthly plan payments based upon an increase in actual expenses constitutes a lack of good faith (doc. # 138, p. 7). This argument is inconsistent with the current record since, at this time, the Debtor is actually offering to increase the plan payments (doc. # 136, p. 2). Hence, this argument is without merit.

Next, Vobile argues the Debtor's Motion is filed in bad faith because not all of the Spouse's income is used to pay both household expenses and the plan payment. Vobile asserts that (i) bankruptcy courts must consider a non-debtor spouse's income in determining the debtor's disposal income under § 1325(b)(1)(B); (ii) the Spouse's position is not consistent with the

family's past practices wherein all of the Spouse's income was treated as household income to determine feasibility and all her separate expenses were treated as household expenses; and (iii) the proposed modified plan treats the Spouse's separate debts as joint debts to be paid under the plan, before creditors get paid (doc. # 138, pp. 11–13). This position is not supported by the current record in this case either, and has already been discussed in the context of Vobile's other objections. As set out above, there is no requirement in the Bankruptcy Code that all of a non-debtor spouse's income be surrendered to the payment of household expenses during the time her spouse has a Chapter 13 case pending, or as a condition of her debtor-spouse obtaining plan modification. Moreover, as already discussed, to the extent Vobile posits that the Debtor must satisfy the disposable income test to meet the good faith test referenced in the modification statute, it is wrong. The Debtor's duty to satisfy the disposable income test *per se* terminated upon entry of the Confirmation Order. Additionally, contrary to what Vobile suggests, the Spouse's sole debts are not part of the household budget expenses that the Debtor pays. Rather, the record indicates the Debtor and his Spouse have set forth both parties' income on Schedule I and clearly articulated which expenses the Spouse is paying and how the balance of her income is allocated (doc. # 122). Vobile alleges that there is a history of the Debtor's being in "complete financial partnership with his Spouse" and this mandates a greater spousal contribution to plan payments (doc. # 138, p. 13). Vobile also pleads that the Court should treat the couple as a single economic unit in general, and in the context of plan modification.[9] Vobile has presented no persua-

---

9. The case Vobile relies upon in support of its economic unit argument, *In re Lorenz*, 337

B.R. 423 (1st Cir. BAP 2006), is from the First Circuit and its rationale has not been adopted

sive authority for this position and the Court finds it unavailing.

The amount of the Spouse's income has been a much debated question throughout this case, and this aspect of Vobile's objection draws attention to the monthly reports the Debtor files to disclose changes in both his and the Spouse's income. This duty to report changes in both parties' income was imposed because the schedules the Debtor initially filed in this case were not accurate or complete, the record revealed that the Debtor's family income and expense were in flux post-petition, and there was a need for verification of the new information reflected on amended schedules of income and expenses. The requirement to file these statements was not intended—and should not be construed as—a determination that the Spouse must contribute all of her income to the Debtor's plan for the pendency of this case. The Court examines this issue in the context of the instant motion to modify only because Vobile has raised it as a possible ground for finding the Debtor failed to propose his second modified plan in good faith. The Court concludes Vobile has failed to establish bad faith on this basis.

### III. The Reporting Statement Requirement

. On June 1, 2015, in connection with its decision denying Vobile's motion to dismiss this case and overruling Vobile's objection to confirmation, the Court directed the Debtor to file monthly income statements ("Monthly Income Statements") documenting the changes in his household income, and to report any household self-employment income, because at the time (i) the Debtor's household income was in flux and rather unpredictable, (ii) the plan had not yet been confirmed and this information was necessary for the computation

of the Debtor's projected disposable income and plan payment, and (iii) the Court had not yet made a determination on the legal issue of whether the § 1325(b) projected disposable income requirement was applicable to plan modifications.

The Court has now determined that the § 1325(b) projected disposable income requirement is not applicable to plan modifications and therefore this information is no longer essential. Now that the plan has been confirmed, and the dueling motions to modify will soon be decided, there is no reason the Debtor and his Spouse should have this ongoing burden, which is not required under the Bankruptcy Code or imposed on any other consumer debtor in this District.

#### CONCLUSION

For the reasons set forth above, the Court finds that the Confirmation Order is final and, therefore, denies Vobile's request to reopen the confirmation proceedings. The Court also finds that all three of the grounds Vobile sets forth in its objection to the Debtor's Second Motion to Modify are unavailing. Therefore, Vobile's Objection is overruled. The Court further finds that in light of the modification of the Confirmation Order, the determinations made in this memorandum, and the current status of this case, there is no need to continue to require the Debtor to file monthly statements relating to his non-debtor spouse's income (doc. # 90, ¶ 25). Therefore, the Court *sua sponte* terminates that obligation and the last statement due shall be the Monthly Income Statement due on April 15, 2016, setting forth any data required to be reported for the month of March 2016.

The parties may proceed with modification proceedings as set out in the Court's prior order (doc. # 143).

by 2nd Circuit Court of Appeals. Therefore, it

is not binding on this Court.

This constitutes the Court's findings of fact and conclusions of law.

## ORDER

*DENYING CREDITOR'S VOBILE INC.'S REQUEST TO REOPEN CONFIRMATION PROCEEDINGS, OVERRULING CREDITOR VOBILE INC.'S OBJECTION TO DEBTOR'S MOTION TO MODIFY, AND SUA SPONTE RELIEVING DEBTOR OF THE DUTY TO FILE MONTHLY INCOME STATEMENTS*

For the reasons set forth in the memorandum of decision of even date, the Court declares the Confirmation Order * entered in this case is final, the Court finds Vobile's Objection to the Debtor's Second Motion to Modify is unavailing, and the Court *sua sponte* determines there is no longer any need for the Debtor to file Monthly Income Statements.

Therefore IT IS HEREBY ORDERED that

1. Vobile's request to reopen the confirmation proceedings is denied,

2. Vobile's Objection to the Debtor's Second Motion to Modify is overruled, and

3. the Debtor's obligation to file Monthly Income Statements shall terminate upon his filing of the March 2016 Statement that is due by April 15, 2016.

---

* All capitalized terms in this Order have the meanings ascribed to them in the accompanying memorandum of decision.